Jasen, J.
The primary issue presented on this appeal is whether a criminal conviction is conclusive proof of its underlying facts in a subsequent civil action. If such a conviction is conclusive, the second issue is whether the equitable remedy which this court fashioned in Gerzof v. Sweeney (22 N Y 2d 297) is available to the appellant.
In November, 1966, plaintiff-appellant, S. T. Grand, Inc., entered into a contract with the defendant-respondent, City of New York, for the cleaning of the Jerome Park Reservoir. No bidding was required, since James Marcus, the city’s Commissioner of Water Supply, Gas and Electricity, let the contract pursuant to the ‘ ‘ public emergency ’ ’ exception to the general bidding requirements for municipal contracts. (General Municipal Law, § 103, subd. 4.) The entire cleaning has been performed.
Subsequently, the appellant and its president were convicted in Federal court of conspiracy to use interstate facilities with intent to violate the New York State bribery laws. (United States v. Corallo, 413 F. 2d 1306.) The conviction was based upon a series of events which culminated in an agreement by the appellant to pay a “ kickback ” to Marcus, in return for Marcus’ award of the cleaning contract to the appellant.
*303 When the appellant sued the city for the unpaid balance of $148,735 due on the cleaning contract, the city claimed, as a defense, that the contract was illegal by reason of the bribery of Marcus, and asserted a counterclaim for the $689,500 which it had previously paid under the contract.
The city moved for summary judgment upon appellant’s cause of action for the unpaid balance and upon the counterclaim. Special Term denied the city’s motion for summary judgment, not on the ground that it found triable issues of fact, but because the court was of the opinion that the case of Gerzof v. Sweeney (22 N Y 2d 297, supra) 11 furnishes compelling authority for holding plaintiff not completely foreclosed from recovery or retaining the amount paid by [the city]. ’ ’
The Appellate Division modified and directed judgment for the city upon both its counterclaim and appellant’s claim for the unpaid balance. The Appellate Division was of the opinion that there were no issues of fact here and that the unique circumstances which were present in Qerzof were not present in this case so that it would not offend the conscience to allow a complete forfeiture of money previously paid or to be paid under the illegal contract.
We turn first to the question of whether the criminal conviction of appellant for bribery conclusively establishes the illegality of the “ emergency ” cleaning contract with the city.
In Schindler v. Royal Ins. Co. (258 N. Y. 310 [1932]), we held that a criminal conviction was prima facie evidence, but not conclusive proof of its underlying facts in a subsequent civil action. In that case, the defendant insurance company interposed the defense of collateral estoppel to a suit by the plaintiff insured for recovery of losses suffered when an insured building was destroyed by fire. The defense was based upon the • fact that plaintiff had been convicted of submitting false claims and proofs of loss. The defense was stricken and plaintiff was allowed to recover. We reluctantly concluded that this result was dictated by stare decisis. In so concluding, we rejected the traditional reason of dissimilarity of object, procedure, and degree and elements of proof between criminal and civil processes, and based our decision solely upon the lack of mutuality of estoppel.
*304 In the 40 years since we decided Schindler, we have greatly expanded the application of collateral estoppel[1], primarily by abolishing the prerequisite of mutuality of estoppel. (B. R. DeWitt, Inc. v. Hall, 19 N Y 2d 141; Schwartz v. Public Administrator of County of Bronx, 24 N Y 2d 65; Albero v. State of New York, 26 N Y 2d 630.) Since the ratio decidendi of the Schindler opinion, mutuality of estoppel, has been expressly abandoned, Schindler and its progeny are no longer viable. (Cf. Vavolizza v. Krieger, 39 A D 2d 446.)
In Schwartz v. Public Administrator of County of Bronx (supra), we set forth the present state of the doctrine of collateral estoppel: “ New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.” (at p. 71).
In the case before us, the appellant was convicted of conspiracy to use interstate facilities with intent to violate New York State bribery laws. The facts upon which that conviction rests — the bribery of Marcus — are the identical facts asserted here to prove the illegality of the “ emergency ” cleaning contract.
In addition, appellant was afforded a full and fair opportunity to contest the bribery issue at its trial. It is well recognized that there are rigorous safeguards imposed to insure against unjust conviction in a criminal action, including the requirements of proof beyond a reasonable doubt (CPL 70.20), and of unanimous verdict (CPL 310.80; People v. Light, 285 App. Div. 496); the right to counsel at any critical stage of the criminal process (e.g., Hamilton v. Alabama, 368 U. S. 52); the right to suppression of involuntary statements (e.g., Brown v. Mississippi, 297 U. S. 278), and of illegally seized evidence (e.g., Mapp v. Ohio, 367 U. S. 643). There can be little doubt that stability of judgments and expedition of trials are served with a resulting increase in the efficiency of the judicial process in finally dispos *305 ing of disputes, and no injustice is committed when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards.
Thus, we hold that the criminal conviction is conclusive proof of appellant’s bribery of Marcus, and that, consequently, the illegality of the “ emergency ” cleaning contract is established, as a matter of law.
Turning to the question of remedy, the rule is that where work is done pursuant to an illegal municipal contract, no recovery may be had by the vendor, either on the contract or in quantum meruit. (Gerzof v. Sweeney, 22 N Y 2d 297, supra, at p. 304; Jered Contr. Corp. v. New York City Tr. Auth., 22 N Y 2d 187, 192; 15 Williston, Contracts [3d ed.], § 1786A; Ann., Municipality— Quasi-Contract Liability, 33 ALR 3d 1164, 1172; Restatement, Contracts, § 598.) We have also declared that the municipality can recover from the vendor all amounts paid under the illegal contract. (Gerzof v. Sweeney, supra, at p. 305.)
The reason for this harsh rule, which works a complete forfeiture of the vendor’s interest, is to deter violation of the bidding statutes, (Gerzof v. Sweeney, supra, at p. 304; Jered Contr. Corp. v. New York City Tr. Auth., supra, at pp. 192, 193.) As we said in Jered: “ The continuing growth of our cities and the expansion of governmental services on all levels has necessitated, over the years, the letting of greater numbers of public contracts. While the amount of money involved in these contracts was relatively small a few decades ago, today the amount is astronomical. It is, therefore, a matter of grave public concern that there be absolute honesty in the procuring of a public contract. If we are to effectively deter the unscrupulous practice of fraudulent and collusive bidding on public contracts, we cannot look alone to existing penal sanctions. The nature of the wrong is such that it is not easily discovered but, when it is, we make it quite clear that courts of this State will decline to lend their aid to the fraudulent bidder who seeks recovery.” (at p. 193).
However, in Gerzof we created an exception to the general rule, based upon the unusual circumstances of that case. There, the Village of Freeport, having decided to increase the capacity of its power plant, advertised for bids on a contract for the purchase and installation of a new electrical generator. Two bids *306 were received, one from Enterprise for $615,685, and one from Nordberg for $673,840. The Village Water and Light Commission recommended that the Village Board of Trustees accept the Enterprise bid. Before the board of trustees could act, a new Mayor and two new trustees were elected, and upon the request of the former, the matter was deferred. When the reconstituted board of trustees met, it summarily dismissed the members of the Water and Light Commission, accepted Nordberg’s higher bid and awarded the contract to Nordberg. Enterprise brought suit and succeeded in having the award set aside. Despite the court’s direction to “ award the contract as provided by law ”, the board of trustees, over the objection of the majority of Water and Light Commission, whose members had been reinstated by court order, had new specifications drawn up for a larger generator. These specifications were prepared with the active assistance of a representative of Nordberg and were so slanted as to make it impossible for anyone but Nordberg to bid on them. Accordingly, Nordberg was the only bidder, and its bid of $757,625 was accepted. After the generator had been installed and the contract price paid, a taxpayer’s action was brought to annul the contract.
Our court concluded that the contract was illegal and void (16 N Y 2d 206) and directed Nordberg to return $178,636 of the contract price of $757,625 to the village. This figure represented the damage which the village suffered by having to take Nordberg’s larger and more expensive generator. The damage figure was arrived at by adding to the difference between the contract price and Enterprise’s original low bid ($141,940), the increased cost of installation of the larger generator ($36,696). In short, the village was put in the position it would have been in had the original Enterprise low bid been accepted.
The equitable remedy which we fashioned for Nordberg in Gerzof is not available to the appellant. In Gerzof, we had a fair idea of the damage which the village had suffered because of Nordberg’s machinations, since the village had already determined that it needed a new generator and there had been one round of' legitimate bidding, from which there developed a responsible low bid. In the case before us, there was neither an untainted determination that the Jerome Park Reservoir needed to be cleaned, nor a round of competitive bidding from *307 which the damages to the city could be computed. Moreover, in Gerzof, the vendor’s illegality[2] infected only the final stages of the municipal contracting process, while in the instant case, the illegality goes to the origins of that process.
Thus, we conclude that the general rule of complete forfeiture should be applied here, rather than the equitable exception of Gerzof. The result may be harsh, but it is necessary in cases where the bribery of municipal officials is confirmed. As we recognized in Gerzof, ‘ ‘ the application of the law to particular cases may not, of course, vary with the sums involved. ” (at p. 306). If we would decree a complete forfeiture of an $8,000 contract, then justice demands that there be a complete forfeiture of an $800,000 contract.
Accordingly, we affirm the order of the Appellate Division.
Chief Judge Fuld and Judges Burke, Breitel, Gabrielli, Jones and Wachtler concur.
Order affirmed, with costs.

. This term is used here to denote the binding effect of a prior adjudication on identical facts and issues raised in a subsequent adjudication involving a different cause of action.

. It should also be noted that there was no conviction or finding in the Gerzof case of any bribery of municipal officials.