862 A.2d 1168 (2004)
373 N.J. Super. 543
COUNTY OF ESSEX, Plaintiff-Appellant/Respondent,
v.
FIRST UNION NATIONAL BANK, Successor in Interest to First Fidelity Securities Group, Defendant-Respondent/Cross-Appellant, and
George L. Tuttle, Jr., Defendant-Respondent, and
Joseph Galluzzi and Lorraine Galluzzi, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2004.
Decided December 22, 2004.
*1170 Patrick T. Collins, Livingston, argued the cause for appellant/respondent County of Essex (Franzblau Dratch, attorneys; Stephen N. Dratch, of counsel; Mr. Collins, on the brief).
Dennis T. Kearney, Florham Park, argued the cause for respondent/ appellant, First Union National Bank (Pitney, Hardin, Kipp & Szuch, attorneys; Lisa Martinez Wolmart, Steven A. Muhlstock, and Mr. Kearney, on the brief).
Ilissa B. Churgin, Spring Valley, NY, argued the cause for respondent George L. Tuttle, Jr. (Kurtzman, Matera, Gurock, Scuderi & Karben, attorneys; Howard M. Gurock, of counsel; Ms. Churgin, on the brief).
Before Judges COBURN, S.L. REISNER and GRAVES.
The opinion of the court was delivered by
COBURN, J.A.D.
In the late 1980's the Essex County Treasurer accepted bribes from a vice-president of First Fidelity Bank, which was part of First Fidelity Securities Group. The bribes were paid in return for the Treasurer's assistance in having Essex County's governing body name the bank as underwriter on three bond offerings totaling over $178 million. The first offering occurred in 1987 for $25 million and the other two occurred in 1989 for $49 million and $104 million. The County paid the bank over $2.9 million in underwriting fees, and the bank paid the Treasurer over $137,000 in bribes.
On October 4, 1996, Essex County sued in the Law Division, alleging breach of contract and fiduciary duty, and violation of the Uniform Securities Law, N.J.S.A. 49:3-47 to -76 ("USL") and the state RICO statute, N.J.S.A. 2C:41-1 to -6.2. Conceding that it had suffered no losses from the first two transactions, the County only sought damages at trial under those causes of action with respect to the last bond offering. But the County also alleged unjust enrichment. And under that theory it sought disgorgement of the bribes and the underwriting fees on all three transactions.
The County obtained a partial summary judgment against First Fidelity's successor in interest, defendant First Union National Bank, for the amount of the bribes, which with interest totaled $213,945.55. First Union appealed. We affirmed in an unreported opinion, County of Essex v. First Union Nat'l Bank, No. A-4842-98T2 (App.Div. July 13, 2000), and the Supreme Court denied certification. 165 N.J. 605, 762 A.2d 219 (2000). First Union paid that judgment.
*1171 During the ensuing trial on the remaining claims, the County proved that the bank took underwriting fees of $375,000 for the $25 million offering in 1987; $968,176 for the $49 million offering in 1989; and $1,539,842.23 for the $104 million offering later in 1989. There was no evidence that other companies participated in the first two transactions or that the bank received anything less than the full amount of those fees. But there was uncontradicted evidence that the bank shared the underwriting fees on the last offering, retaining only 52.34 percent for itself and transferring the rest to other underwriters who were not involved in the bribery.
Over the County's objection, the judge limited the County's unjust enrichment claim to the third bond offering on the theory that the County, rather than the bank, had the burden of proving the actual fees retained by the bank, and had done so only with respect to the last offering.
The jury awarded the County $600,000 for unjust enrichment. On the USL claim the jury found that there were misrepresentations; but it did not reach the issue of damages because it also found that the County knew the truth as to the matters which were the subject of the misrepresentations. On the breach of contract claim, the jury found a breach by the bank but also found that the County suffered no loss. On the breach of fiduciary duty claim, the jury found there was neither a breach nor a loss. On the RICO claim, the jury found that all elements had been proven except for loss. After adding interest on the $600,000 verdict from June 30, 1989, the judge entered judgment in favor of the County on the unjust enrichment claim in the amount of $1,130,663.04, and later denied the County's request for a new trial and other relief.
On appeal, the County's main argument is that the judge erred in denying it the opportunity to obtain disgorgement of all the underwriting fees, totaling $2.9 million. The County asks us to direct entry of judgment, or at least remand for trial with that amount as the upper limit for the unjust enrichment recovery. Alternatively, the County argues that the judge erred in placing on it the burden of proving the amount of the fees, if any, transferred by the bank to other underwriters, and consequently asks for a new disgorgement trial on the first two bond offerings, during which it could seek, respectively, the fees of $375,000 and $968,176.
The County makes these additional arguments. The judge erred by: (1) denying it a directed verdict on the breach of fiduciary duty claim; (2) charging the jury that the County could not recover on the USL claim if it knew of the bribe agreement; (3) failing to include in the RICO charge a statement that if the jury found no damages had been proved at trial it, nonetheless, could return a verdict for the County based on the summary judgment for the bribe payments; and (4) failing to mold the verdict against Tuttle by trebling the summary judgment damages against him and adding an award of counsel fees. We have carefully considered these additional arguments based on the record and the briefs, and we are satisfied that they are without sufficient merit to warrant full discussion in a written opinion. R. 2:11-3(e)(1)(E). But a few comments are in order.
Without objection, the judge advised the jury that the damages sought on the third bonding under each cause of action, other than unjust enrichment, were the same; namely, any losses the County suffered as a result of that transaction. Underpinning that claim was the premise that, properly advised, the County would not have committed to the bond offering at all. The County's expert testified that the bond offering created a loss of almost $8 *1172 million, and the bank's expert put the maximum loss at about $1.8 million. Since the jury found there was no loss, it was obviously satisfied that the County would have gone through with the transaction no matter what. And the record clearly shows why: the County did not want to raise taxes and the bond offering was the only way to avoid that result. Since there were no damages, the first three alleged, additional points of error are of no moment. The last additional point of error was offered without any citation of supporting authority, and therefore is undeserving of further comment. See R. 2:6-2 and McGarry v. St. Anthony of Padua Roman Catholic Church, 307 N.J.Super. 525, 531, 704 A.2d 1353, 1356 (App.Div.1998).
The bank argues that (1) the County was not entitled to pursue a cause of action for unjust enrichment because it had also sued for breach of contract; (2) it abandoned its unjust enrichment claims on the first two transactions; and (3) the judge properly limited the claim on the third transaction to the fees actually received. On its cross-appeal, the bank argues that the judge erred in awarding interest from the time of the bond transaction instead of from the filing date of the complaint.
In light of the nature of the issues to be addressed, a more detailed statement of facts is unnecessary. But we note that the treasurer and the vice-president were both convicted in federal court of various crimes arising from the bribery scheme. The additional relevant facts will be noted as each point is discussed.
A cause of action for unjust enrichment requires proof that "defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519, 526 (1994). The most common circumstance for application of unjust enrichment is when a plaintiff has not been paid despite having had a reasonable expectation of payment for services performed or a benefit conferred. Ibid. Obviously that is not the situation here because the County would have issued the bonds in any case, and would have been obliged to pay essentially the same underwriting fees.
But there are other circumstances in which courts find unjust enrichment applicable. In particular, when corrupt means have been employed to obtain a governmental contract, the concept of unjust enrichment has been used to deny the wrongdoer any profit from the transaction and to thereby deter such conduct. See Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 86 A.2d 201, cert. denied, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952); S.T. Grand, Inc. v. City of New York, 32 N.Y.2d 300, 344 N.Y.S.2d 938, 298 N.E.2d 105 (1973); and Manning Eng'g, Inc. v. Hudson County Park Comm'n, 74 N.J. 113, 376 A.2d 1194 (1977), which are listed in the order that they will be discussed.
In Driscoll, the defendants purchased the stock of private companies that owned the Burlington-Bristol and Tacony-Palmyra bridges. 8 N.J. at 447, 86 A.2d at 207. Using their political influence, they then sold the bridges to the county bridge commission at an inflated price, which the commission raised by issuing bonds to the general public. Id. at 450, 86 A.2d at 209. The Supreme Court noted that the plaintiffs had waived their right to seek damages measured by the difference between the amount of the bonds issued, $12,400,000, and the estimated condemnation price of $5,000,000, and then ruled that the waiver did "not preclude [it], however, from requiring the members of the selling syndicate ... to disgorge the profits which they received from this illegal transaction." Id. at 499, 86 A.2d at 233. The Court further explained what it meant *1173 by profits and why they should be disgorged:
The members of the selling syndicate must make restitution of that which they have received, for otherwise they will be unjustly enriched by their fraud at the expense of the public. They ... are therefore liable to repay the $3,050,347 gross profit which they received for their stock as the result of this transaction and they are not entitled to any expenses incurred in effectuating the fraudulent scheme, for none of those expenses can rightly be said to have been of benefit to the bridge commission or the public it represents.
[Id. at 500, 86 A.2d at 234.]
S.T. Grand involved a reservoir-cleaning contract obtained from the City by bribery. 298 N.E.2d at 106. S.T. Grand sued for the balance due on the contract and the City resisted the claim and counterclaimed to recover what it had already paid. Id. at 107. The Court of Appeals held that when "work is done pursuant to an illegal municipal contract, no recovery may be had by the vendor, either on the contract or in quantum meruit .... [and] the municipality can recover from the vendor all amounts paid under the illegal contract." Id. at 108. The court explained that "[t]he reason for this harsh rule, which works a complete forfeiture of the vendor's interest, is to deter violation of the bidding statutes." Ibid.
In Manning Engineering, plaintiff received a county contract for engineering services because of its principal's "role as a conduit for illegal `kickbacks.'" 74 N.J. at 119, 376 A.2d at 1197. After receiving almost $140,000 for services rendered on the project, it was replaced by another engineer. Id. at 118, 376 A.2d at 1197. It then submitted a bill for the balance due under the contract, approximately $250,000. Ibid. Citing S.T. Grand, among other authorities, the Court observed that "[t]he general rule is that damages for breach of an illegal public contract will be denied, regardless of whether it is sought under a contract or quantum meruit theory." Id. at 138, 376 A.2d at 1207. Citing Driscoll, the Court added that "a contract is also unenforceable where it is held to be contrary to public policy." Ibid. Since the Park Commission had not counterclaimed for the sums previously paid to plaintiff, the Court limited its ruling to a denial of plaintiff's affirmative claim. But the Court touched on the subject of complete restitution in this manner:
Often such illegality is based merely upon a failure to conform to bidding requirements. See Hudson City [Contracting] Co. v. Jersey City Incinerator Authority, 17 N.J. 297, 305, 111 A.2d 385[, 389] (1955); Williston, supra, at 344; McQuillin, Municipal Corporations (3 ed. 1966), § 29.69 at 408. Under the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq., even relatively technical defects in the bidding process will suffice to invalidate a public contract if the deviation from bidding specifications creates the potential for favoritism or corruption. L. Pucillo & Sons, Inc. v. Borough of New Milford, 73 N.J. 349, 356, 357, 375 A.2d 602[, 605] (1977); Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 410, 341 A.2d 327 [, 330-31] (1975); Hillside Tp. v. Sternin, 25 N.J. 317, 324-26, 136 A.2d 265[, 268-70] (1957). Since public policy mandates such a drastic remedy for irregularities in the procedural safeguards against corruption, we can hardly imagine that a lesser remedy should be available to the public entity where there are demonstrated instances of illegality  the very evils with which we have been most concerned in dealing with public contracts. Indeed, we think that the only arguable question is whether restitution by the plaintiff would not also be justified *1174 under these circumstances. See S.T. Grand, Inc. v. City of New York, supra.

[74 N.J. at 139, 376 A.2d at 1207-08.]
Read in isolation, the last sentence of the quote might be taken as suggesting that the Court was reluctant to endorse the concept of full disgorgement. But given the Court's prior decision in Driscoll, its reliance on S.T. Grand, and the full context of the paragraph in which the sentence appears, we are satisfied that the Court meant that what was "arguable" was whether it should order full restitution on its own motion when that relief had not been sought by the governmental body. On the other hand, if the Court intended to leave the question open, then we take this opportunity to close it. We do so in part because Driscoll required full disgorgement and was not overruled by Manning Engineering. We also reach that result because there is no logical reason for distinguishing between wrongdoers based on whether they have physically received all their ill-gotten gains, which they wish to retain, or are suing for all or a portion of such gains under the illegal contract. In all of these cases, only full disgorgement satisfies the principle of preventing unjust enrichment, and the remedy, though harsh, advances the goal of deterring others from inducing governmental employees to violate their public trust.
A rule of full disgorgement is also supported by these four cases. In SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90 (2d Cir.1978), Judge Friendly said that "the primary purpose of disgorgement is not to compensate investors. Unlike damages it is a method of forcing a defendant to give up the amount by which he was unjustly enriched...." Id. at 102. In SEC v. Wang, 944 F.2d 80 (2d Cir.1991), the court said that disgorgement "seeks to deprive the defendants of their ill-gotten gains to effectuate the deterrence objectives of the securities laws." Id. at 85. In Warren v. Century Bankcorporation, Inc., 741 P.2d 846, 852 (Okla.1987), the court put it this way
The remedy in restitution rests on the ancient principles of disgorgement. Beneath the cloak of restitution lies the dagger that compels the conscious wrongdoer to "disgorge" his gains. Disgorgement is designed to deprive the wrongdoer of all gains flowing from the wrong rather than to compensate the victim of the fraud. In modern legal usage the term has frequently been extended to include a dimension of deterrence. Disgorgement is said to occur when a "defendant is made to `cough up' what he got, neither more nor less." From centuries back equity has compelled a disloyal fiduciary to "disgorge" his profits. He is held chargeable as a constructive trustee of the ill-gotten gains in his possession. A constructive trustee who consciously misappropriates the property of another is often refused allowance even of his actual expenses. Where a wrongdoer is shown to have been a conscious, deliberate misappropriator of another's commercial values, gross profits are recoverable through a restitutionary remedy.
[Id. at 852 (footnotes omitted).]
And in Cross v. Berg Lumber Co., 7 P.3d 922 (Wyo.2000), the court quoted from and endorsed the views of the Warren court on this subject. Id. at 935-36.
With respect to the last transaction, the County argues that the principle of full disgorgement justified its claim to all of the underwriting fees. But the general rule in this context is that if a defendant passes the benefit on to someone who is entitled to it, the defendant is not treated as having received the benefit. Dan B. Dobbs, Law of Remedies § 4.5(4) at 444 (2d ed. Hornbook Series 1993). On this transaction, the uncontradicted evidence *1175 was that the bank retained only 52.34 percent of the underwriting fees while the rest of the fees were received by other underwriters who were not involved in the bribery. Since the total fees were $1,539,842.23, it would further appear that the bank retained $805,953.40 in fees. But the bank's expert testified that it only received about $700,000, and the County does not contend that the judge erred in using that figure as representing what the bank actually received. Nor does it take issue with the $600,000 verdict, apart from contending that it was entitled to all underwriting fees without credit to the bank for those fees shared with other underwriters. Therefore, we reject the County's attack on the judgment with respect to the last transaction, and turn to its contention that the judge erred in refusing to submit to the jury the County's disgorgement claims on the first two transactions.
The evidence produced by the County on these claims was that it paid the bank underwriting fees of $375,000 for the first transaction and $968,176 for the second transaction. Although the bank had introduced evidence that it retained only 52.34 percent of the underwriting fee on the third transaction, it offered no proof of sharing the underwriting fees on the first two transactions.
During the jury charge conference, and without a request from the bank, the judge decided that the County had the burden of proof as to the bank's share of the underwriting fees. Although the jury had not been presented with any evidence that more than one underwriter was involved in the first two transactions, the judge appears to have assumed that to be so, or likely so, and concluded that the unjust enrichment claim was not proven as to those transactions. The County's attorney objected to the ruling, stating that his "disagreement... had to do with whose responsibility it was to perform the internal accounting function or provide evidence of that function with respect to the allocation of fees on the [first two] transactions." He then said this:
In our case, we proved the fees on the other transactions, not just the ... [third transaction], but the other two as well. First Union met those proofs with respect to the [third transaction] and elected to do nothing with respect to the other two.
Now I'm told that my proofs are deficient because I didn't present evidence as to what the allocation  if any, I might add  existed as to the other two transactions. First Union is the controller of this evidence. First Union knew what it was as to the [third transaction]. I presume that if First Union had competent evidence with respect to the other two transactions it would have done so. It elected not to do so.
And under those circumstances I don't see why we should be told we are precluded in full from asserting the claim....
That objection was sound and should have been accepted by the judge. Generally the burdens of production of evidence and persuasion are imposed "on the party best able to satisfy those burdens" because of its "greater expertise and access to relevant information." J.E. ex rel. G.E. v. State, Dept. of Human Services, 131 N.J. 552, 569-70, 622 A.2d 227, 235-36 (1993). Also, "[i]t is a familiar principle that the burden of establishing ... a fact ... is on the person relying thereon." Snyder v. I. Jay Realty Co., 53 N.J.Super. 336, 347, 147 A.2d 572, 578 (App.Div.1958), aff'd in part, rev'd in part on other grounds, 30 N.J. 303, 153 A.2d 1 (1959). The sharing of the underwriting work and fees, if it occurred, would, as we have ruled with respect to the third transaction, come within the legal concept of not *1176 holding the wrongdoer liable for benefits passed on to another whose claim to the benefits is just because of a lack of participation in the wrongdoing. The assertion that the benefits were passed on to such another is a defense to an unjust enrichment claim. Law of Remedies, supra, § 4.6 at 449; cf. Scott v. Mayflower Home Improvement Corp., 363 N.J.Super. 145, 164, 831 A.2d 564, 575 (Law Div.2001) (offsets to a restitution claim must be proved by defendant); Fid. Mgmt. & Research Co. v. Ostrander, 40 Mass.App.Ct. 195, 662 N.E.2d 699, 704-05 (1996) (defendant not entitled to an offset against disgorgement for taxes paid on the profit that was subject to disgorgement, because she failed to present adequate evidence for the offset); and SEC v. Antar, 97 F.Supp.2d 576, 578 (D.N.J.2000) (although plaintiff has burden of proving that the disgorgement figure is a reasonable approximation of unlawful profits, the burden shifts to the defendant to demonstrate that the disgorgement figure is not a reasonable approximation). Since the County introduced uncontradicted evidence of what the bank deducted from the proceeds of the bond offerings as its underwriting fees, and since the bank failed to prove that it had retained anything less than all of those fees, the judge erred in holding on the first two transactions that the County failed to meet its burden of proof.
The bank, as we have noted, offers two additional arguments against the unjust enrichment claims, to which we now turn. Respecting all three transactions, the bank argues that the judge erred in permitting the jury to consider the unjust enrichment claims because "a party may not recover for unjust enrichment when there is a valid contract between the parties." For that proposition, the bank cites Caputo v. Nice-Pak Prods., Inc., 300 N.J.Super. 498, 693 A.2d 494 (App.Div.), certif. denied, 151 N.J. 463, 700 A.2d 876 (1997). Even putting to one side the invalidity of the contracts at hand, that case fully supports the course adopted by the judge.
Although the Caputo court held that a plaintiff may not recover under both breach of contract and unjust enrichment, it also held that both causes of action may be submitted to the jury. Id. at 507, 693 A.2d at 498-99. The court put it this way:
We conclude that a plaintiff who has attempted to prove both breach of contract and unjust enrichment need not choose which one will go to the jury, as long as there is sufficient evidence as to both. Under proper instructions from the judge, the jury may decide which of the two was proved, and plaintiff will be able to recover under one of the theories. It is only recovery under inconsistent theories that is not permitted. We find no reason to forbid the submission of alternative theories to the jury in circumstances such as this.
[Id. at 504, 693 A.2d at 497.]
The bank also argues that the County abandoned its unjust enrichment claims on the first two transactions. The record is clearly to the contrary. While it is true that the County conceded that it had suffered no damages with respect to those transactions, the record, including the statement of the County's attorney, which is quoted above, objecting to the judge's determination that the County was not entitled to pursue unjust enrichment on the first two transactions, demonstrates that these claims were never abandoned. Disgorgement in this context has nothing to do with damages; rather it is a method for preventing unjust enrichment obtained by bribery of a public official, and for deterring such conduct by rendering it entirely unprofitable.
Next we consider the bank's argument that the judge erred in allowing the County interest on the $600,000 jury award for unjust enrichment from the date of the *1177 third transaction, June 30, 1989, rather than from the date the complaint was filed in 1996.
We reject the bank's first contention that R. 4:42-11(b) controls for the obvious reason that unjust enrichment is not a tort and the rule is limited to the provision of interest in tort cases. Unjust enrichment is an equitable remedy. Woodside Homes, Inc. v. Town of Morristown, 26 N.J. 529, 536, 141 A.2d 8, 11 (1958). And it has long been the case that "[o]ur courts of equity allowed or withheld interest or fixed the rate as justice dictated." Busik v. Levine, 63 N.J. 351, 357, 307 A.2d 571, 574 (1973) (citations omitted). In Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 506, 323 A.2d 495, 512 (1974), the Court observed that
[t]he basic consideration [in allowing interest] is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.
The trial judge allowed interest from the transaction date because "the only logical time that ... one could conceive beginning would be the day that the party ... who was unjustly enriched received the money." We are obliged, of course, "to defer to the trial judge's exercise of discretion involving prejudgment interest unless it represents a manifest denial of justice." Musto v. Vidas, 333 N.J.Super. 52, 74, 754 A.2d 586, 598 (App.Div.2000) (citations omitted). Implicit in the judge's conclusion is the concept that as of the transaction date the County was deprived of the use of money to which it was rightly entitled. Rova Farms, supra, 65 N.J. at 506, 323 A.2d at 512-13. But in this case this is so only in a technical sense, because the bank used improper means to obtain the money, not because it did not provide services that the County wanted. Had the County employed another underwriter it still would have expended approximately the same amount of money for similar services and at the same time.
The County notes that in Driscoll the Court awarded interest from the transaction date, but there the innocent party had suffered damages from the date of the transaction that far exceeded the money obtained under the theory of unjust enrichment. 8 N.J. at 501, 86 A.2d at 234. Here, the jury found that the County suffered no damages.
It is clear that the County would not have had the underwriting fee monies to invest had the bank not been the underwriter, because it would have completed the transactions with another underwriter in any case. Therefore, imposing interest from the transaction date was a manifest denial of justice, particularly where, as here, the bribery was conducted by one bank employee without the knowledge of his superiors. Disgorgement of the fees with interest from the date of the complaint is a sufficient equitable remedy for the wrong committed. Therefore, we reverse the judgment and remand for calculation of interest from the filing date of the complaint.
Finally, we turn to the County's argument that it is entitled to judgment on the first two transactions, an argument that is implicit in its demand that we order judgment for all of the underwriting fees. There are no issues of fact as to those transactions. The bank obtained the business through bribery, and the County proved the amounts retained by the bank on each underwriting. Having failed to offer evidence showing that those underwriting fees were shared with others, the bank has no right to another opportunity to offer such proofs. And since the law *1178 requires disgorgement of those fees, on remand the judge shall enter judgment for the County for the amounts in question plus interest from the filing date of the complaint.
Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.