891 A.2d 600

COUNTY OF ESSEX, PLAINTIFF–RESPONDENT AND CROSS–AP-
PELLANT, v. FIRST UNION NATIONAL BANK, SUCCESSOR
IN INTEREST TO FIRST FIDELITY SECURITIES GROUP,
DEFENDANT–APPELLANT AND CROSS–RESPONDENT, AND
JOSEPH GALLUZZI, LORRAINE GALLUZZI AND GEORGE L.
TUTTLE, JR., DEFENDANTS.

Argued October 11, 2005—Decided January 26, 2006.

48

*Dennis T. Kearney* argued the cause for appellant and cross-respondent (*Pitney Hardin,* attorneys).

*Patrick T. Collins* argued the cause for respondent and cross-appellant (*Franzblau Dratch,* attorneys).

Justice WALLACE, JR. delivered the opinion of the Court.

The primary issues in this appeal are whether claims for unjust enrichment/disgorgement survive when there is a valid contract, and if so, when an employee of a commercial bank bribes a public official to obtain underwriting privileges on three bond issues, whether the bank must disgorge that part of the fee paid to innocent third parties. We hold that under the circumstances presented, disgorgement is an appropriate remedy, but the fees paid to innocent third parties should not be part of the disgorgement award.

I.

Joseph Galluzzi was a financial consultant to the Essex County Board of Freeholders (County) from 1982 to June 1987, after which he served as County Treasurer for two years before becoming a financial consultant to the Essex County administration. George Tuttle was a Senior Vice President of First Fidelity Bank, now First Union National Bank (Bank), between 1985 and 1991. As the manager of the municipal securities department, he developed and negotiated municipal securities transactions for the Bank.

Beginning in 1987, as a result of an unlawful kickback scheme between Galluzzi and Tuttle, the Bank was selected by the County to serve as underwriter on three municipal bond issues. Galluzzi submitted fictitious invoices to the Bank for work he had not performed and Tuttle arranged for the Bank to pay Galluzzi.

The record does not clearly show when the illicit scheme was discovered. However, in 1995 Tuttle pled guilty in federal court to falsifying records while he was a Bank employee to induce the purchase and sale of municipal securities. He admitted his involvement in the kickback scheme with Galluzzi and that he concealed the payments.

In addition, the Securities and Exchange Commission (SEC) brought administrative proceedings against the Bank. On January 9, 1996, the SEC released its findings that Tuttle, on behalf of the Bank, agreed to a "kickback arrangement" with Galluzzi to secure municipal bond underwriting business from the County. The matter was resolved after the SEC agreed to the Bank's offer of settlement. The Bank agreed to pay disgorgement plus prejudgment interest in the amount of $1,793,309.43 into an escrow fund held by the SEC. A plan was devised for injured parties to collect from that fund, either directly or by instituting a civil action.[1] Any unclaimed monies would be paid to the United States Treasury.

Thereafter, in October 1996, the County commenced this civil action, asserting various causes of action against the Bank, Tuttle, and Galluzzi. That same month, Galluzzi was indicted for numerous criminal violations arising from the kickback scheme with Tuttle. Following his conviction in April 1998, the County moved in the civil action for partial summary judgment against Galluzzi and Tuttle for the amount of the kickbacks the Bank paid to Galluzzi. The trial court granted the motion and entered judgment against Galluzzi and Tuttle in the amount of $137,769.16 plus interest, for a total of $206,809.22. The County then moved for partial summary judgment against the Bank, asserting that the Bank was responsible for its employee's actions. The trial court agreed and entered judgment against the Bank in the amount assessed against Galluzzi and Tuttle together with prejudgment interest.

---

[1] The record does not reflect whether the penalty of $500,000 that the Bank was required to pay was paid into the fund or directly to the United States Treasury. Nor does it reflect whether the County made a claim against the fund. Following oral argument in this matter, the Bank sought to supplement the record and asked the Court to "consider what effect, if any, should be given to the post-judgment application made by Essex County to obtain funds paid by [the Bank] to the [SEC] in disgorgement of fees obtained in the 1987, 1989A and 1989B underwriting transactions." We denied that motion without prejudice in order to permit the Bank to raise that issue before the trial court on remand.

After the trial court certified the judgment as final, the Bank appealed. The Bank argued that it was error to grant summary judgment based on respondeat superior, that the damages awarded to the County were duplicative of the disgorgement ordered by the SEC, and that the SEC judgment precluded the County from pursuing any other claims for damages. The Appellate Division rejected those arguments, finding that the Bank benefited from Tuttle's actions and that those actions were within the scope of his employment. The panel found that the administrative action brought by the SEC was punitive in nature, and the monies placed in escrow were for the benefit of individuals damaged by the illegal scheme rather than the County. Because the Bank asserted the election of remedies argument against the County for the first time on appeal, the panel declined to address it. We denied the Bank's petition for certification. *County of Essex v. First Union Nat'l Bank*, 165 *N.J.* 605, 762 *A.*2d 219 (2000). The Bank then paid the judgment.

Thereafter, the Bank filed a motion for summary judgment seeking to dismiss the County's RICO claim, and the County filed a cross-motion for summary judgment on that same claim. The trial court denied both motions.

A jury trial was held over eight days in September 2002. At the beginning of trial, to make it clear that the bribery amounts were not part of the County's asserted damages, the trial court informed the jury that the County had previously received from the Bank the amount of the bribes Tuttle had paid to Galluzzi. The County presented evidence of the kickback arrangement between Galluzzi and Tuttle that resulted in the Bank being named the underwriter in the $25 million 1987 pension bond refunding (1987 Bond Transaction), the $49 million 1989 pension bond refunding (the 1989A Bond Transaction), and the $104 million 1989 general obligation bond offering (the 1989B Bond Transaction). The evidence showed that in connection with each bond transaction, the Bank realized a substantial fee, known in the industry as the "underwriter's discount" (discount or fee). The

1987 Bond Transaction generated $375,000 in fees, the 1989A Bond Transaction $968,176.92, and the 1989B Bond Transaction $1,539,842.23. In the aggregate, the Bank received underwriting fees of $2,883,019.15.

Despite protests by the County, the trial court placed the burden of proof on the County to establish any sharing of fees by the Bank with other underwriters. For the 1989B Bond Transaction, the evidence was clear that the Bank allocated to itself 52.34% of the bonds and the corresponding underwriter's discount, and allocated the balance of the bonds and discount to four other underwriting firms. Neither the County nor the Bank presented any evidence on the allocation of the fees in either the 1987 Bond Transaction or the 1989A Bond Transaction.

The trial court instructed the jury that if it concluded that the Bank "acted wrongly in obtaining the work or the fees," it could find the County was entitled to disgorgement of part or all of the fees for the 1989B Bond Transaction. However, over the objection of the County, the Court declined to charge the jury on the County's claim for disgorgement of the underwriting fees for the 1987 Bond Transaction or 1989A Bond Transaction. The trial court reasoned that the failure of the County to present evidence on the allocation of the fees on those transactions precluded the possibility of disgorgement. The court also found that the County was not entitled to full disgorgement on the 1989B Bond Transaction because the evidence presented at trial showed that the Bank retained only 52.34% of the fee. As a result, the court limited the potential unjust enrichment award to $700,000, the amount of the fee the Bank's expert testified that the Bank retained.

The jury returned a verdict in favor of the County for its unjust enrichment/disgorgement claim on the 1989B Bond Transaction in the amount of $600,000. On the breach of fiduciary duty claim, the jury found the Bank did not breach its duty, and the County suffered no loss. The jury denied the County's claim for damages relating to the Uniform Securities Law because there was neither a breach nor a loss. On the state RICO claim, the jury found the

elements of the claim had been proven, but there was no loss. The trial court subsequently awarded prejudgment interest from June 30, 1989, the date of the 1989B Bond Transaction. The County's motion for a new trial and other relief was denied.

The County appealed and the Bank cross-appealed. In a published opinion, the Appellate Division held that the County was entitled to full disgorgement of the fees for the 1987 Bond Transaction and 1989A Bond Transaction and affirmed the partial fee disgorgement award for the 1989B Bond Transaction. *County of Essex v. First Union Nat'l Bank*, 373 *N.J.Super.* 543, 558, 554, 862 *A.*2d 1168 (2004). In response to the Bank's argument that unjust enrichment cannot be awarded in the face of a valid contract, the panel found that even though unjust enrichment typically applies when no valid contract exists, the remedy is also applicable in the form of disgorgement when corrupt means have been employed to obtain a government contract. *Id.* at 550, 862 *A.*2d 1168. The panel reasoned that when there is corruption on the public, unjust enrichment acts to deny the wrongdoer any profit from the transaction and to deter such conduct. *Ibid.* However, the panel concluded that if the wrongdoer passes the benefit to an innocent third party who is entitled to the fee, then the court will not treat the wrongdoer as having received that benefit for purposes of disgorgement. *Id.* at 553, 862 *A.*2d 1168. Because the uncontradicted evidence showed the Bank retained only 52.34% of the underwriting discount on the 1989B Bond Transaction, while the remaining discount was received by other underwriters not involved in the bribery, the County was entitled only to disgorgement of that portion of the fee retained by the Bank. *Id.* at 553–54, 862 *A.*2d 1168.

The panel found error in the trial court's conclusion that the County failed to meet its burden of proof in regard to the disgorgement of the underwriting fees paid to the Bank on the first two bond transactions. *Id.* at 555, 862 *A.*2d 1168. The panel concluded that the burden of proof to show any sharing of fees was on the Bank, not the County, and found undisputed evidence

of the amount of the total fees received by the Bank. *Ibid.* Because the Bank failed to offer evidence of fee sharing on the first two bond transactions at trial, the panel concluded that the Bank should not be given further opportunity to offer such proofs. *Id.* at 558, 862 *A.*2d 1168.

The panel also disagreed with the trial court's starting date for prejudgment interest and found that prejudgment interest should run from the date the complaint was filed and not from the date of the bond transaction. *Id.* at 557–58, 862 *A.*2d 1168. Additionally, the panel found without sufficient merit to warrant discussion the County's arguments of error for the trial court's (1) denial of a directed verdict to the County on the breach of fiduciary duty claim; (2) charge to the jury that the County could not recover on the Uniform Securities Law claim if it knew of the bribe agreement; (3) failure to include in the RICO charge a statement that if the jury found no damages it could still return a verdict for the County based on the prior judgment for the bribe payments; and (4) failure to mold the verdict against Tuttle by trebling the prior amount awarded against him and ordering counsel fees. *Id.* at 548, 862 *A.*2d 1168.

We granted the County's petition for certification and the Bank's cross-petition. 183 *N.J.* 218, 871 *A.*2d 95 (2005).

## II.

### A.

The County argues that it is entitled to full disgorgement of fees on each of the bond transactions because the standard for disgorgement is gross profits. The County contends that this Court in *Driscoll v. Burlington–Bristol Bridge Co.*, 8 *N.J.* 433, 86 *A.*2d 201, *cert. denied*, 344 *U.S.* 838, 73 *S.Ct.* 25, 97 *L.Ed.* 652 (1952), rejected a credit for expenses incurred in effectuating the fraudulent scheme, and, therefore, the Bank was not entitled to an offset for the fees paid to other underwriting firms. The County

reasons that because the Bank is in business to make money, the Bank realized some benefit from sharing the fee with others.

The County asserts that as a matter of law, the bribing of a County employee while the Bank was advising the County in negotiating bond transactions constituted a breach of duty, and that punitive damages are recoverable in cases of a breach of that duty. Even though the jury found no damages under the fiduciary duty claim, the County notes that the courts below overlooked the pretrial award of damages for the amount of the bribes in favor of the County as a basis to recover punitive damages.

Finally, the County contends that the trial court properly awarded prejudgment interest from the date of the transaction because the Bank had no entitlement to the underwriting fees. The County argues that the Bank only received those fees as a consequence of the bribes, and, therefore, the Bank should not receive the benefit of a shorter prejudgment interest period. The County concludes that absent a manifest denial of justice, the Appellate Division should have deferred to the trial court's exercise of discretion to award prejudgment interest from the date of the bond transaction.

### B.

The Bank argues that unjust enrichment is an equitable remedy that is only available when there is no valid contract, and because there was a valid contract here, the claim of unjust enrichment/disgorgement should not stand. The Bank adds that on appeal, the County improperly adjusted its claim of unjust enrichment to disgorgement.

In regard to the first two bond transactions, the Bank contends that the trial court properly excluded the unjust enrichment claims because the County abandoned those claims and acknowledged it suffered no damages on those transactions. The Bank notes that in reliance on the County's position, it presented no evidence concerning the allocation of the underwriter's fees. The Bank reasons that even if the County can pursue its claims on the

first two transactions, it was error for the Appellate Division to usurp the jury's factfinding function and order judgment in favor of the County for the fees involved in those transactions.

In regard to prejudgment interest, the Bank urges this Court to affirm the Appellate Division because the County was not innocent in the bribery scheme, the bribery was committed by one bank employee without the knowledge of his superiors, and the County suffered no damages because it would have completed the refinancing in any event.

The Bank also argues that the County's claim for punitive damages was properly denied because the jury found that the Bank and Tuttle did not breach any fiduciary duty and the County suffered no loss based on that claim. According to the Bank, pursuant to *N.J.S.A.* 2A:15–5.13c, punitive damages may be awarded only if compensatory damages have been awarded; nominal damages will not suffice.

### III.

We turn first to the issue of fee disgorgement. Initially, we agree with the Appellate Division's conclusion that unjust enrichment/disgorgement is a valid basis on which to require recovery when the wrongdoer obtained the benefit as a direct result of bribing a public official.

Our case law has long recognized that in analogous circumstances, general principles of equity mandate that the wrongdoer be relieved of any profits. In *Driscoll, supra,* 8 *N.J.* at 447, 86 *A.*2d 201, the Governor and others filed suit against the defendants seeking rescission of the purchase of two bridges by the Burlington County Bridge Commission (Bridge Commission) on the ground that the transaction contravened sound public policy. The defendants planned to purchase the stock of private companies that owned the bridges, *id.* at 449, 86 *A.*2d 201, and then use their political influence to have the Bridge Commission purchase the bridges at an inflated price, *id.* at 450, 86 *A.*2d 201. The county issued $12.4 million in revenue bonds to pay the purchase

price to the defendants for the bridges. *Id.* at 465, 86 *A*.2d 201. It was estimated that if the county had acquired the bridges by condemnation, it would have cost only $5 million, a difference of $7.4 million. *Id.* at 499, 86 *A*.2d 201.

At trial the plaintiffs waived their damages claim and elected to proceed on a theory of rescission. *Ibid.* This Court found ample evidence of a "palpable abuse of discretion and breach of trust" by the county and the Bridge Commission, *id.* at 477, 86 *A*.2d 201, and that the defendants were equally culpable, *id.* at 478, 86 *A*.2d 201. In assessing the equities of various remedies, this Court concluded that despite the plaintiffs' waiver of their claim against the defendants for $7.4 million (the difference between the $12.4 million in bonds issued and the estimated condemnation price of $5 million),

> [the] waiver [of damages] does not preclude us, however, from requiring [the defendants,] over whom the court acquired jurisdiction[,] to disgorge the profits which they received from this illegal transaction. Where rescission is prayed for and is warranted by the facts, but cannot be decreed because of the intervening equities of innocent third parties such as the bondholders here, under general principles of equity the court may require the wrongdoers to account for their profits so that as nearly as may be the parties will be protected and equity done. [*Id.* at 499, 86 *A*.2d 201 (citations omitted).]

This Court required the defendants to disgorge their gross profits of $3,050,347, and disallowed "any credit for the expenses incurred in effectuating the fraudulent scheme, for none of those expenses can rightly be said to have been of benefit to the bridge commission or the public it represents." *Id.* at 500, 86 *A*.2d 201.

In *Manning Engineering, Inc. v. Hudson County Park Commission,* 74 *N.J.* 113, 117–18, 376 *A*.2d 1194 (1977), an engineering firm sued Hudson County for the balance of a fee allegedly due for services performed under a contract in connection with the development of a park on the Hackensack River in Jersey City. The firm was awarded a judgment for approximately half of the balance. *Id.* at 118, 376 *A*.2d 1194. One month later, Hudson County filed a motion seeking to set aside the prior judgment on the ground that the firm had engaged in illegal kickbacks to obtain the contract. *Id.* at 119, 376 *A*.2d 1194.

This Court found that the firm was barred from recovery under the contract, *id.* at 142, 376 *A.*2d 1194, and upheld its prior holding in *Driscoll,* that a contract is unenforceable where it is held to be contrary to public policy, *id.* at 138, 376 *A.*2d 1194. Although the defendant had not sought to recover the amount it had previously paid, the Court noted that "the only arguable question is whether restitution by the plaintiff would not also be justified under these circumstances." *Id.* at 139, 376 *A.*2d 1194 (citing *S.T. Grand, Inc. v. City of New York,* 32 *N.Y.*2d 300, 344 *N.Y.S.*2d 938, 298 *N.E.*2d 105 (1973)).

In *S.T. Grand, supra,* 32 *N.Y.*2d at 301, 344 *N.Y.S.*2d at 939, 298 *N.E.*2d at 106, the plaintiff had bribed a City of New York employee in connection with a reservoir cleaning contract with the City. The plaintiff sued for the balance due on the contract, and the defendant counterclaimed for the amount it had previously paid. *Ibid.* As a deterrent to illegal conduct in public contracts, New York's highest court allowed the defendant to recover from the plaintiff all amounts paid under the contract that had been obtained through bribes. *Id.* at 306, 344 *N.Y.S.*2d at 943, 298 *N.E.*2d at 109.

█ Strong remedies are necessary to combat unlawful conduct involving public officials. Disgorgement in favor of the public entity serves as a harsh remedy against those who bribe a public official to secure a public contract and provides a deterrent to such unlawful activity. We hold that when a public contract is obtained by bribing a public official, the public entity is entitled to the gross profits obtained by the wrongdoer.

█ Applying that principle here, Tuttle, a senior vice president of the Bank, pled guilty to falsifying records to induce the purchase and sale of municipal securities while he was employed by the Bank. In that context, the illegal conduct of Tuttle is attributable to the Bank, which, absent disgorgement, would receive a benefit from the wrongful conduct of its employee committed in the scope of his employment. The Appellate Division correctly held that the County was entitled to unjust enrichment/disgorgement from the Bank not only on the 1989B Bond

Transaction submitted to the jury, but on the other two bond transactions as well. Contrary to the Bank's contention, the County established the amount of the underwriting discounts for all three bond transactions. It was undisputed that the total underwriting discounts were $375,000 on the 1987 Bond Transaction; $968,176.92 on the 1989A Bond Transaction; and $1,539,842.23 on the 1989B Bond Transaction.

The Bank official's unlawful conduct entitled the County to disgorgement of the total fees received by the Bank on each of those transactions. It was error for the trial court to limit disgorgement to the 1989B Bond Transaction and not to permit the jury to award the fees on the other two bond transactions. Further, we disagree with the Bank's assertion that the County waived its claim for disgorgement on the first two bond transactions. Although the County acknowledged it suffered no damages on those transactions, it still sought to recover under a disgorgement theory. As noted, the reasons for disgorgement are not related to whether the County suffered damages. It is the evil of the wrongdoer retaining any of the fruits of its wrongful conduct that grounds the claim. As a matter of law, the County was entitled to recover the fees paid to the Bank on each of the bond transactions.

## IV.

We need not deal at length with the County's contention that the Bank was not entitled to offset those portions of the fees that were paid to other underwriters. We agree with the Appellate Division that the Bank should not be treated as having received fees paid to other innocent underwriters. *See* Dan B. Dobbs, *Law of Remedies* § 4.5(4) at 444 (2d ed. Hornbook Series 1993). There is no evidence that the fees paid to other underwriters directly benefited the Bank. If the record were otherwise, we might reach a different conclusion. The jury accepted the evi-

dence that showed the Bank retained only 52.34% [2] of the under-writing fees in the 1989B Bond Transaction, while the other underwriters received the balance of the fees. The Bank must only disgorge that portion of the fee that it received and retained. Thus, the portion of the judgment awarding $600,000 to the County for the 1989B Bond Transaction is affirmed.

## V.

As noted earlier, the trial court erred when it placed the burden of proof on the County to show any division of fees. The burden should have been on the Bank. "Our decisions have recognized that the party with greater expertise and access to relevant information should bear those evidentiary burdens." *J.E. ex rel. G.E. v. State,* 131 *N.J.* 552, 569–70, 622 *A.*2d 227 (1993) (citations omitted). Once the County presented evidence of the amount of the fees and its entitlement to disgorgement, the burden should have shifted to the Bank to establish that it did not receive the entirety of the fees. It is for the Bank to prove its defense that it did not retain the fees or that the fees were subsequently earned and received by a third party.

Because the trial court placed the burden of establishing fee sharing on the County and because the County offered no such evidence, the Bank was not compelled to produce evidence of fee sharing on the first two transactions. In fairness, a remand is necessary to give the Bank an opportunity to present evidence to convince a factfinder that it shared the underwriting fees with innocent underwriters. If the Bank does not contend that the fees were shared in the first two bond transactions, a remand is not required on that issue.

---

[2] The Bank's expert testified that the Bank received $700,000 as its fee. The County did not challenge that amount; nor does the County challenge the $600,000 verdict on that portion of its claim.

## VI.

The trial court determined that prejudgment interest on the $600,000 jury award for unjust enrichment/disgorgement should run from the date of the 1989B Bond Transaction. The Appellate Division disagreed and ordered prejudgment interest to run from the date the complaint was filed.

■■■■■ Unlike prejudgment interest in tort actions, which is expressly governed by *Rule* 4:42–11(b), the award of prejudgment interest on contract and equitable claims is based on equitable principles. Pressler, *Current N.J. Court Rules,* comment 9 on *R.* 4:42–11 (2006) (see cases cited therein). In awarding prejudgment interest,

> [t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled. [*Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 506, 323 *A.2d* 495 (1974) (citations omitted).]

The allowance of prejudgment interest is a matter of discretion for the trial court. *In re Estate of Lash,* 169 *N.J.* 20, 34, 776 *A.2d* 765 (2001). Unless the award "represents a manifest denial of justice," an appellate court should not interfere. *Musto v. Vidas,* 333 *N.J.Super.* 52, 74, 754 *A.2d* 586 (App.Div.), *certif. denied,* 165 *N.J.* 607, 762 *A.2d* 221 (2000).

■■■ Both the trial court and the Appellate Division concluded that awarding prejudgment interest to the County was appropriate, but they differed on the starting date. It is obvious that the County's cause of action for unjust enrichment/disgorgement is an equitable claim. As we noted above, it is grounded in the theory that a wrongdoer should not profit from its wrongdoing regardless of whether the innocent party suffered any damages.

From the date of each bond transaction, the Bank had the benefit of the money that "the [County] is found to have been earlier entitled." *Rova Farms, supra,* 65 *N.J.* at 506, 323 *A.2d* 495. Although the issue is fairly debatable, we see no manifest denial of justice in the trial court's award of prejudgment interest

from the date of the bond transaction. *See Driscoll, supra,* 8 *N.J.* at 501, 86 *A.*2d 201 (awarding prejudgment interest on disgorgement award from date of closing). Accordingly, we reverse the Appellate Division's judgment and reinstate that portion of the trial court's order awarding prejudgment interest from the date of the 1989B Bond Transaction.

## VII.

 Lastly, we agree with the Appellate Division that in light of the jury's finding that the County suffered no loss under the fiduciary duty cause of action, the County is not entitled to punitive damages. *See N.J.S.A.* 2A:15–5.13c.

## VIII.

In summary, we affirm the jury's verdict in favor of the County for disgorgement of $600,000 for the 1989B Bond Transaction and prejudgment interest thereon from the date of that transaction. We also affirm that portion of the Appellate Division judgment finding the County was entitled to disgorgement of the fees on the 1989B Bond Transaction, as well as the other two bond transactions. We remand to the trial court to enter judgment in favor of the County in the amount of the underwriter's fees for the 1987 Bond Transaction and the 1989A Bond Transaction, and to award prejudgment interest thereon from the date of each issue. Because the burden of proof should have been on the Bank to demonstrate whether a portion of the fees was paid to innocent third parties, we remand that issue to the trial court to afford the Bank the opportunity to present evidence as to the allocation of fees, if any, on the 1987 Bond Transaction and 1989A Bond Transaction. In all other respects, we affirm the judgment of the Appellate Division.

*For affirmance and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.