**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2405-16T1

ALLEN S. GLUSHAKOW,
M.D., P.A.,

     Plaintiff-Respondent,

v.

ANDREA KUNAK, a/k/a
ANDREA KUNAK-SHARKEY,
and CECILIA W. BLAU, ESQUIRE,

     Defendants-Appellants.

_____

     Argued October 10, 2018 – Decided March 5, 2019

     Before Judges Hoffman, Suter and Firko.

     On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7032-14.

     Cecilia W. Blau and Andrea Kunak, appellants, argued the cause pro se.

     James C. Mescall argued the cause for respondent (Mescall & Acosta, PC, attorneys; James C. Mescall, on the brief).

PER CURIAM

Defendants Andrea Kunak-Sharkey (Kunak) and Cecilia W. Blau (Blau) appeal four orders entered in connection with a complaint filed by plaintiff Allen S. Glushakow, M.D., P.A. arising from his medical treatment of Kunak following a motor vehicle accident. The case was tried to a jury, which returned a verdict in plaintiff's favor. Following entry of a judgment that included attorney's fees and pre-judgment interest, we stayed execution pending appeal conditioned on defendants depositing $150,000 with the Clerk. Defendants contend the trial court erred by not allowing them to present evidence to the jury that an underlying personal injury protection (PIP) arbitration was mishandled and that plaintiff should be held accountable for his attorney's negligence in that matter. They assert that a release and assignment of benefits signed by Kunak was unenforceable. They claim plaintiff was not entitled to an award of attorney's fees or pre-judgment interest. We affirm the judgment except for the award of attorney's fees, which we reverse and remand for further proceedings.

I

We relate relevant facts from the underlying trial. At Kunak's first appointment with plaintiff in July 2009, she told him "she sustained a severe head injury" from a motor vehicle accident in 2006, had seen a number of other doctors, "had extensive physical therapy" and "had a number of falls due to a

balance problem."  He commenced conservative treatment.  An EMG study indicated carpel tunnel syndrome.[1]  He performed surgery to correct this.  She had physical therapy for several months thereafter.  Kunak returned to plaintiff's office in October 2009 complaining about her back, neck and left knee.  She complained of "falling a lot as a result of a balance problem" and left knee pain.  An MRI "[s]uggested a torn meniscus" and there was "pre-existing arthritic changes in the knee."  He performed surgery to repair the torn ligament and meniscus.  In April 2011, she complained of her right knee "locking" and "back discomfort."  Plaintiff performed cartilage surgery on that knee to correct torn cartilages.  Later, he aspirated fluid from her right knee.

Kunak signed a "Release and Assignment of Benefits" when she initially sought treatment from plaintiff in July 2009.  In relevant part, it provided:

> I understand that regardless of any insurance payment or the outcome of any legal proceeding or settlement, I am ultimately financially responsible for all charges not otherwise paid by insurance or legal settlement or covered by this authorization.
>
> . . . .
>
> Patient is responsible to pay any debts, including attorney fees, incurred to collect past due bills.  Past

---

[1]  Plaintiff described carpel tunnel syndrome as a "nerve disorder, where the median nerve in the wrist is injured, and you have numbness in the . . . hands as a result."

due bills are subject to interest charges at the rate of [one and one-half percent] per month.

A month later, she signed an "Agreement For Payment Of Outstanding Bill." The Agreement stated, in pertinent part, as follows:

> In consideration of withholding immediate legal action against me for collection of my outstanding bill for medical services rendered, I hereby agree to make a minimum payment of $50.00 at the end of treatment and direct my attorney, Cecilia Blau, Esq., to pay any such outstanding medical bill . . . from the proceeds of any settlement or judgment in any case or claim pending on my behalf . . . . I understand, however, that my obligation to pay this outstanding bill is in no way contingent upon the outcome of any pending litigation and that I remain primarily responsible for payment of this outstanding bill irrespective of the outcome of any such litigation.

Shortly after this, Blau executed a conditional letter of protection, which stated, "[y]ou may consider this a letter of protection whereby if there is a recovery for unpaid services rendered in this case, your bill will be protected." The agreement was "conditioned [on] your submitting timely statements and proper billing forms to the appropriate insurance companies."

Kunak's insurer questioned whether some or all of the medical treatment she received from plaintiff and other medical providers was related to the 2006 automobile accident and submitted the matter to a dispute resolution arbitration. The PIP arbitration was conducted telephonically by a dispute resolution

4

professional. Plaintiff was represented by counsel, but not by Blau, who represented Kunak for her personal injury claim.

Plaintiff took the position in the arbitration that Kunak's carpel tunnel was "an aggravation of a previous condition" that was related to the 2006 car accident. He also claimed her knee problems were causally related to the same accident because of her frequent falls and balance disorder. Plaintiff submitted a report from Dr. Park who claimed Kunak's knee problems were attributable to the 2006 accident, although Dr. Park did not testify at the arbitration. Kunak testified about her injuries.

The arbitrator found the 2006 car accident aggravated Kunak's pre-existing carpal tunnel syndrome and awarded plaintiff his medical fees for that treatment. However, he found Kunak's knee injuries were not related to the accident because she had additional falls after her balance problems were resolved. He denied plaintiff an award for those fees. Plaintiff's application to modify or clarify the arbitrator's decision was denied because it "simply reargu[ed] the evidence submitted in th[e] matter."

In July 2014, plaintiff filed a breach of contract complaint against Kunak and Blau seeking a monetary judgment of $26,635.32 plus counsel fees, interest and costs for the knee surgeries that were denied payment in the arbitration. By

A-2405-16T1

this time, Kunak had settled the personal injury claim that Blau was handling for her for $160,000, and the monies were being held by Blau in a trust account. Plaintiff's complaint alleged Kunak agreed to pay a "fair and reasonable amount" for his services, had not done so and, as such, breached their contract. The complaint alleged that Blau breached the letter of protection by not paying plaintiff.

Defendants' answer denied they owed plaintiff any compensation for treatment. In their separate defenses, defendants claimed the PIP arbitration was mishandled and that negligence caused the loss to plaintiff. There were no counterclaims, cross-claims or third-party complaints.

Plaintiff's motion for summary judgment was granted in part and denied in part. Although Blau's 2009 letter of protection was found to be a "legally binding contract between plaintiff and defendants," material fact issues existed about plaintiff's invoice that detailed the "medical services [he] performed on [Kunak] and payments made by the PIP carrier," which precluded summary judgment. The case proceeded to trial.[2]

_____

[2] Blau was disqualified from representing Kunak at the trial. Both defendants were self-represented.

A-2405-16T1

The jury found that plaintiff and Kunak had a contract, Kunak breached it, plaintiff was not negligent in connection with the arbitration, and Blau breached her contract with plaintiff. The jury also found that the "usual, customary and reasonable fee for the medical services provided by plaintiff" was $24,359.47. On November 28, 2016, the court entered an order that plaintiff's counsel fees and interest were to be determined by motion. The order stated that upon determination of that motion, a final judgment "shall" provide that judgment would be entered for $24,359.47 in favor of plaintiff against Kunak and that Blau was to release to plaintiff and his attorney $24,359.47 of the funds she was holding for Kunak.

Plaintiff's attorney fee certification requested $31,669.90 for fees and costs, reflecting 124.40 hours billed at $250 per hour and $569.90 in costs. Defendants opposed this and filed a motion for a new trial. The court denied the new trial motion and a subsequent motion for reconsideration. The court entered a judgment on January 6, 2017, for $24,359.47 in favor of plaintiff against both defendants, plus attorney's fees of $31,669.90 and interest in the amount of $17,538.81. We granted an emergent application for a stay pending appeal conditioned on a $150,000 deposit with the Superior Court Trust Fund.

On appeal, defendants raise the following issues:

POINT I

WHERE A DOCTOR TAKES, THROUGH AN ASSIGNMENT OF BENEFITS, THE PATIENT'S ENTITLEMENT TO PIP INSURANCE COVERAGE FOR HIS BILL, HE HIRES A LAWYER, THEY TAKE THE BILL TO PIP ARBITRATION, THEY NEGLIGENTLY AND GROSSLY MISHANDLE THE ARBITRATION AND LOSE THE INSURANCE COVERAGE OF THE BILL, IT WAS ERROR FOR THE TRIAL JUDGE TO BAR AND PRECLUDE ALL EVIDENCE OF THE ATTORNEY'S NEGLIGENCE.

POINT II

THE RELEASE AND ASSIGNMENT OF BENEFITS KUNAK WAS REQUIRED TO SIGN BY DR. GLUSHAKOW IN ORDER TO RECEIVE TREATMENT WAS UNENFORCEABLE AS AN IMPERMISSIBLE EXCULPATORY CLAUSE AND UNCONSCIONABLE.

POINT III

THE NEGLIGENT ACTS OF PLAINTIFF'S ATTORNEY IS ATTRIBUTABLE TO PLAINTIFF AND LIABILITY THEREFORE MUST REMAIN WITH PLAINTIFF AS PRINCIPAL AND AGENT.

POINT IV

PLAINTIFF IS NOT ENTITLED TO INTEREST AND ATTORNEY'S FEES AS THE AMOUNT HE CLAIMED WAS UNASCERTAINABLE EXCEPT BY A JURY.

With one exception, we do not agree these issues are meritorious. The attorney fee award was not adequately explained and we are constrained to reverse only that issue and remand it for further proceedings.

II

Defendants contend they are entitled to a new trial because of errors made by the trial court. "The standard for appellate review of a trial court's decision on a motion for a new trial is substantially the same as that controlling the trial court except that due deference should be made to its 'feel of the case,' including credibility." Caldwell v. Haynes, 136 N.J. 422, 432 (1994) (quoting Feldman v. Lederle Lab., 97 N.J. 429, 463 (1984)). The appellate court defers to the trial court with respect to "intangibl[es]" not transmitted by the record to decide if there was a miscarriage, but otherwise makes its own independent determination of whether a miscarriage of justice occurred. Carrino v. Novotny, 78 N.J. 355, 360-61 n.2 (1979). "Jury verdicts should be set aside in favor of a new trial sparingly and only in cases of clear injustice." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:49-1 (2019) (citing Caicedo v. Caicedo, 439 N.J. Super. 615, 628-29 (App. Div. 2015)). "A new trial will be required if the trial judge concludes that erroneous trial rulings resulted in prejudice to a party." Ibid. (citing Crown v. Campo, 136 N.J. 494 (1994)).

Defendants contend they are entitled to a new trial because the court erred by not allowing evidence before the jury that the attorney who handled the PIP arbitration was negligent in presenting plaintiff's claim for Kunak's treatments. "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Scott, 229 N.J. 469, 479 (2017) (alteration in original) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). We apply a deferential standard in reviewing a trial court's evidentiary rulings and uphold its determinations "absent a showing of an abuse of discretion." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). A reviewing court must not "substitute its own judgment for that of the trial court" unless there was a "clear error in judgment," a ruling "so wide of the mark that a manifest denial of justice resulted." Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

The PIP arbitrator found that the medical treatment Kunak received for her knees was unrelated to the 2006 automobile accident and denied payment for these portions of the PIP claim. Defendants argue this was wrong because the medical treatment received for her knees was related to her imbalance problems, which was related to the accident. They contend the PIP arbitration was "lost" because the attorney representing plaintiff was not prepared, did not

call Dr. Park as a live witness, did not prepare Kunak for the arbitration, and provided an incomplete factual summary to the arbitrator. At the jury trial, Blau was not permitted to provide the report she prepared about the PIP attorney's alleged mishandling of the arbitration.

We do not agree that the trial court abused its discretion in precluding testimony regarding the alleged malpractice of plaintiff's attorney at the PIP arbitration. That attorney was not a party in plaintiff's case.[3] Whether he could have been added to the case as a defendant or third-party defendant begs the question, because defendants never made a motion to add the attorney even though in a separate defense they raised that an indispensable party was missing from the litigation. Without the attorney as a party, the court did not abuse its discretion in precluding defendants from trying to prove his negligence at the PIP arbitration.

Much of what defendants wanted to prove about the absent attorney's conduct was put before the jury in any event. Blau testified "[t]he arbitration was not done properly" and that Kunak was not prepared by the lawyer before the arbitration. When asked if this was the fault of the PIP attorney, Blau answered "[a]bsolutely." Kunak testified that the lawyer did not prepare her

---

[3] The record also did not include an affidavit of merit against the attorney.

ahead of the PIP arbitration. She said she kept calling the lawyer to see if she should come into the office "but they kept saying no." She participated in the arbitration by phone at "home alone."

The PIP award was admitted into evidence in the jury trial by consent and undercut the claim about attorney negligence. It evidenced that the question of whether Kunak's knee conditions related to the 2006 accident was squarely before the arbitrator and vetted. There was evidence of a falling episode in 2006, and she reported to that doctor she was "having falling spells" but "she did not have any complaints of knee pain and there were no objective findings as they related to either knee." Dr. Park's report opined the 2006 accident caused an imbalance injury and that Kunak then suffered falling attacks, injuring her knees. The PIP attorney's arbitration summary, criticized as inadequate, asserted that all of the medical treatment for Kunak's knees was causally related to the 2006 accident. It stated "[h]er series of falls was attributable to her balance problems which originated with the accident [of 2006]." Although the PIP arbitrator did not find a connection between the accident and the knee surgeries, it was not because the evidence was not presented. The arbitrator wrote:

> While there was some fall downs, there was no reported injury to the knees for a significant period of time

> despite the testimony of [Kunak]. Moreover, despite Dr. Park's theory, [Kunak] testified that the imbalance was resolved and that she still had fall downs. There was no instability of the knees when examined by Dr. Wolkstein, despite pain.

On this record, the trial court did not abuse its discretion in precluding testimony about the PIP attorney's alleged negligence and certainly there was no manifest injustice warranting a new trial because much of the information was already before the jury.

On appeal, defendants argue that plaintiff may not avoid responsibility for his attorney's negligent handling of the PIP claim based on a principal agent relationship. They cite to State v. Mauti, 448 N.J. Super. 275 (App. Div. 2017) in their brief for the proposition that "a letter written by a lawyer . . . containing admissions from the defendant, can be used at trial as the statement of the defendant, because the lawyer was simply acting on behalf of the client defendant." However, Mauti had nothing to do with holding a client civilly liable for the negligence of his attorney. In Mauti, the issue was whether an attorney's letter that described "the medications and dosages" defendant administered was an adopted admission by defendant under N.J.R.E. 803(b)(3), or whether the prosecutor was "barred from using any statements of fact contained in defense counsel's letter because they were made as part of 'plea

negotiations' under N.J.R.E. 410." Id. at 323. The court's holding clarified what constituted plea negotiations for purposes of N.J.R.E. 410. That issue is not relevant.

In this case, the jury expressly found plaintiff was not negligent "in connection with the arbitration" because it answered "no" to this question on the verdict sheet. This foreclosed defendants' argument that plaintiff's conduct "in connection" with the arbitration could be the subject of any further liability under the novel theory they advance.

Defendants argue the assignment of benefits and release form that Kunak signed was "unenforceable as an impermissible exculpatory clause and unconscionable." Any chose in action arising from a contract is assignable. Lech v. State Farm Ins. Co., 335 N.J. Super. 254, 258 (App. Div. 2000). PIP claims are contractual and assignable. Ibid. Their assignment furthers the goal that injured individuals obtain prompt medical treatment by facilitating "direct payment on behalf of patients." Id. at 261.

Defendants characterize the assignment as "exculpatory" because they contend it afforded plaintiff indemnification for his own negligence. This argument fails because the jury found plaintiff was not negligent in connection with the arbitration. Therefore, factually, the contention that the assignment

indemnified plaintiff for his negligence was not supported. Defendants cite no other legal authority that an assignment of benefits is unconscionable or against public policy.

Defendants argue plaintiff is not entitled to interest and attorney fees because the amount plaintiff sued on was "unascertainable." Citing to a quote from General Electric Corp. v. E. Fred Sulzer & Co., 86 N.J. Super. 520, 549-550 (Law Div. 1965), they contend that where the damages sought are unliquidated, pre-judgment interest should not be allowed.

Plaintiff's claim against defendants was plainly capable of calculation. Defendants even submitted expert testimony to the jury about the proper billing for all of the codes to reach a dollar amount that was reasonable, customary and usual. This simply was not a case involving unliquidated damages or a non-ascertainable amount.

A court may enter an award of pre-judgment interest when the contract permits this. See Van Note-Harvey Assocs., PC v. Twp. of E. Hanover, 175 N.J. 535, 542 (2003). "The award of prejudgment interest on contract and equitable claims is based on equitable principles." Cty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006). An award for pre-judgment interest is addressed to the sound discretion of the trial judge. Litton Indus. v. IMO Indus., 200 N.J. 372,

15

390 (2009). "Unless the allowance of prejudgment interest 'represents a manifest denial of justice, an appellate court should not interfere.'" Ibid. (quoting Cty. of Essex, 186 N.J. at 61).

The release and assignment signed by Kunak authorized the assessment of pre-judgment interest. Defendants did not challenge the pre-judgment interest calculation or show how its assessment constituted an abuse of discretion.

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of a clear abuse of discretion." Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)). A court has abused its discretion "if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). In calculating the amount of reasonable attorney's fees, "an affidavit of services addressing the factors enumerated by R.P.C. 1.5(a)" is required. R. 4:42-9(b); Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009). R.P.C. 1.5(a) sets forth the factors to be considered when determining an attorney's fee award.

The trial court had a detailed certification of services from plaintiff's counsel. However, at the motion for a new trial, the trial court only briefly touched upon the attorney fee issue. There was no analysis of the R.P.C. factors or consideration of the arguments made by defendants that certain fees should not be included. The trial court did not provide its reasoning, contrary to Rule 1:7-4(a). Because of this, we reverse the attorney fee award and remand that issue for appropriate analysis under R.P.C. 1.5.

Applying our standard of review, we conclude the verdict did not result in a miscarriage of justice. On the issues raised, the trial court did not abuse her discretion. Both parties had an opportunity to present their version of the facts in dispute. Reasonable jurors could have concluded that there was sufficient evidence to find that plaintiff provided services to Kunak, that these were not paid by PIP, and that she was indebted to plaintiff for payment of these services. Then, to the extent that Blau was holding the funds that Kunak obtained in a personal injury settlement, she agreed to pay these monies to plaintiff, and had not done so, making her responsible for payment of the required amount. The contract permitted attorney's fees and pre-judgment interest. The court did not abuse its discretion in the award of pre-judgment interest. The award for attorney's fees is reversed and remanded.

 A-2405-16T1

We conclude that defendants' further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-2405-16T1