NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1987-15T1

BEDROCK CONCRETE CORPORATION,

 Plaintiff-Respondent/
 Cross-Appellant,

v.

SICON CONTRACTORS, and 277 ROUTE 70,
LLC,

 Defendants-Appellants/
 Cross-Respondents,

and

OCEAN UTILITY CONTRACTING, INC.,

 Defendant.
_________________________________________________

 Submitted January 10, 2017 – Decided September 25, 2017

 Before Judges Messano and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Ocean County, Docket
 No. L-2628-13.

 Mensching & Lucarini, PC, attorneys for
 appellants/cross-respondents (John J.
 Mensching, on the brief).

 Richard A. Epstein, attorney for
 respondent/cross-appellant.
PER CURIAM

 Defendants Sicon Contractors (Sicon) and 277 Route 70, LLC

(Route 70), appeal from the December 3, 2015 judgment entered

after a bench trial in favor of plaintiff Bedrock Concrete

Corporation (Bedrock) in the amount of $77,915, together with

attorney fees of $20,863.99, costs of $670.99, and prejudgment

interest in the amount of 2.25% per annum. Sicon argues that

the judge erred in enforcing Bedrock's construction lien and in

awarding counsel fees, costs and prejudgment interest. Bedrock

cross-appeals from the judge's refusal to award the

contractually agreed upon rate of 18% for past due balances.

 Route 70 is the owner of property located at 277 Route 70

in Toms River. Sicon was engaged as the general contractor to

construct a commercial building on the property. Sicon hired

Bedrock to provide labor, materials and equipment necessary to

construct a concrete slab and steel shell for the building. The

contract price was $668,435, which increased to $675,015 through

subsequent change orders.

 Bedrock was required to construct the concrete slab and

shell in accordance with the project plans and specifications,

as well as the plans prepared by the project engineer, East

Coast Engineering, Inc. (East Coast). The contract called for

installation of base stone prior to the installation of the

 2 A-1987-15T1
concrete slab. At Bedrock's request, East Coast placed stakes

in the ground which were used by Bedrock to determine the

location and elevation of the slab.

 After the slab was completed, it was determined that the

finished floor grade was approximately two inches below the

grade specified in the project plans. It is not disputed that

the differential affected drainage at the site. To address the

grade discrepancy, Sicon engaged Ocean Utility Contracting, Inc.

to remove curbing in the front of the building, reinstall it at

a lower grade, and change the slope and grading of the parking

lot.

 Sicon paid Bedrock approximately $597,000 of the contract

price but withheld final payment. In May 2013, Bedrock filed a

construction lien for the amount due. In September 2013,

Bedrock filed a complaint against defendants seeking enforcement

of the lien and alleging unjust enrichment and breach of

contract. Defendants filed a counter-claim also alleging breach

of contract and seeking to discharge the lien.

 On February 6, 2015, the trial judge granted partial

summary judgment to Bedrock against Sicon in the amount of

$26,604.08, "with entitlement to interest on said sum to be

determined by the Court at a later date and subject to offsets,

 3 A-1987-15T1
if any, to be determined at a later date." Neither party

appealed from that judgment.

 Trial began on September 30, 2015 and continued for three

days. On October 28, 2015, the trial judge issued a written

decision enforcing Bedrock's lien. The judge based his decision

on the credibility of the witnesses, concluding, the plaintiff's

proofs were "more believable by a preponderance of the evidence"

than defendant's.

 Specifically, the judge noted that Bedrock's president,

Lawrence Wilderotter, "answered questions while on the witness

stand easily and straightforwardly." The judge was impressed by

Wilderotter's candor in admitting "either the stakes [installed

by East Coast] were wrong or his use of them [was] wrong." The

judge also remarked that Wilderotter testified "in a manner and

with an assured and serious air that made one confident of his

position."

 Similarly, the judge found Bedrock's project manager, Kevin

McNaboe, testified "in a direct and confident manner" that the

"final elevations were obtained from stakes set in the ground by

the engineer."

 By contrast, the judge found that Jason Marciano, an

engineer employed by East Coast who was called by Sicon, "was

not [as] effective as a witness as Mr. McNaboe." The judge

 4 A-1987-15T1
noted that Marciano admitted that another firm had established

the original proposed elevations for the job and he was merely

"on call" to perform the staking. Of significance, Marciano

"acknowledged that he never spoke to Mr. McNaboe about the

error" in the final elevation, and instead "resolved it with the

company who installed the curbing."

 The judge found the testimony of Sicon's construction

manager, Jeffrey Crisalli even less persuasive:

 Mr. Crisalli initially insisted that he tried
 to reach Plaintiff [regarding the error], and
 eventually emailed and set up a meeting with
 Mr. McNaboe, but Mr. McNaboe failed to
 attend. . . . He admitted that the emails were
 general, and could not recall any single
 discussion about the issue with Mr. McNaboe,
 although he maintained rather vaguely that
 they must have discussed it. It would seem
 to this Court that on such an issue as this
 one, in which so much money was involved,
 there should have been a precise recollection
 of informing Plaintiff, and their subsequent
 conversation.

 The judge observed that the contract required Sicon to

"give prompt written notice" to Bedrock if it became aware of

"any fault or defect in conformance of work with the plans and

specifications." Although Crisalli initially testified he tried

to contact Bedrock about the elevation issue, "under cross

examination, he retreated from that assertion." The judge

described Crisalli as "evasive" on the elevation issue and

 5 A-1987-15T1
accused him of attempting "to obfuscate the major issue of

trial."

 The judge concluded that when the elevation error was

discovered, Bedrock was not notified or given an opportunity to

review or investigate the issue. The judge entered an order on

December 3, 2015 enforcing the lien.

 On appeal, defendants argue the judge's findings are not

supported by adequate, substantial, and credible evidence and

the judge erred in enforcing the construction lien. We find

these arguments so lacking in merit that they warrant no further

discussion beyond our observation that the trial judge's

thorough and extensive credibility determinations find abundant

support in the record. R. 2:11-3(e)(1)(E).

 We next address Bedrock's cross-appeal on the award of

prejudgment interest. The contract provides for a "service

charge" of 1.5% per month (18% per annum) for "all unpaid

balances after 30 days." The trial judge observed that 18% was

"onerous, and excessive," and reduced the prejudgment interest

figure to 2.25%. Neither party accepts this decision. Bedrock

argues the award should have been for the full 18%, as provided

in the contract; Sicon claims that awarding prejudgment interest

on the entire judgment of $77,915 was erroneous.

 6 A-1987-15T1
 "Unlike prejudgment interest in tort actions, which is

expressly governed by Rule 4:42-11(b), the award of prejudgment

interest on contract and equitable claims is based on equitable

principles." County of Essex v. First Union National Bank, 186

N.J. 46, 61 (2006). Generally, an award for prejudgment

interest is addressed to the sound discretion of the trial

judge. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372,

390 (2009). "Unless the allowance of prejudgment interest

'represents a manifest denial of justice, an appellate court

should not interfere.'" Ibid. (quoting County of Essex, supra,

186 N.J. at 61).

 Applying these principals, we note that Bedrock's cause of

action seeking to enforce the construction lien is an equitable

claim, "grounded in the theory that a wrongdoer should not

profit from its wrongdoing regardless of whether the innocent

party suffered any damages." County of Essex, supra, 186 N.J. at

61. From the time Bedrock completed its work on the project,

Sicon had the benefit of the money the judge found Bedrock was

entitled to.

 The contract is captioned, "Standard Shell Building

Agreement" and was negotiated by Wilderotter, who formed Bedrock

in 1996, and Crisalli, who signed on behalf of Sicon, and has

owned a construction consulting firm for twelve years.

 7 A-1987-15T1
Wilderotter and Crisalli also negotiated three subsequent change

orders. During trial, Sicon contested the enforceability of the

lien, but did not challenge Paragraph 9 of the contract which

provides:

 Should it become necessary to place this
 account in the hands of an attorney for
 collections, the buyer agrees to pay for any
 and all costs of collections, including, but
 not limited to, reasonable attorney fees
 incurred by Bedrock Concrete. Service charges
 in the amount of 1.5% per month (18% per annum)
 will be added to all unpaid balances after 30
 days.

 We note that this section assesses a penalty for "unpaid

balances" and does not specifically reference prejudgment

interest. Whether it is called a service charge, as defined in

the contract, or prejudgment interest, the award is "regarded by

our courts as compensatory -- to indemnify the plaintiff for the

loss of what the monies due him would presumably have earned if

payment had not been refused." Rova Farms Resort, Inc. v. Inv'rs

Ins. Co., 65 N.J. 474, 506 (1974).

 The basic consideration is that the defendant
 has had the use, and the plaintiff has not,
 of the amount in question; and the interest
 factor simply covers the value of the sum
 awarded for the prejudgment period during
 which the defendant had the benefit of monies
 to which the plaintiff is found to have been
 earlier entitled.

 [Ibid.]

 8 A-1987-15T1
 Other than a conclusory finding that 18% was onerous and

excessive, the trial judge gave no reason and cited no authority

for reducing the agreed-upon contractual rate from 18% to 2.25%.1

Sicon has presented no authority or any convincing argument as

to why the service charge and attorney fee provisions in a

contract entered into voluntarily by two experienced parties

should not be enforced.

 That portion of the December 3, 2015 order entering

judgment in favor of Bedrock against Sicon in the sum of $77,915

is affirmed. The provision setting prejudgment interest at

2.25% is vacated and the matter is remanded to the trial judge

to set an interest rate consistent with the factors identified

in this opinion. We do not retain jurisdiction.

1
 In their brief, defendants assume the judge relied on Rule
4:42-11, which governs prejudgment interest, in arriving at
2.25%, but there is no proof of this in the record.

 9 A-1987-15T1