**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0687-19T1

GLENTINA KUPOLATI,

    Plaintiff-Respondent,

v.

VILLAGE OF TIMBER
CREEK ASSOCIATION,

    Defendant-Appellant.

_____

Argued November 12, 2020 – Decided January 5, 2021

Before Judges Ostrer and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1927-16.

Gerald Kaplan argued the cause for appellant (Methfessel & Werbel, attorneys; Gerald Kaplan and David Incle, Jr., on the briefs).

Marc F. Greenfield argued the cause for respondent (Spear, Greenfield, Richman, Weitz & Taggart, P.C., attorneys; Marc F. Greenfield and Jeremy M. Weitz, on the brief).

PER CURIAM

Defendant Village of Timber Creek Association appeals from the trial court's order granting plaintiff Glentina Kupolati's motion to enforce the Association's agreement to settle her personal-injury lawsuit.[1] The Association also appeals from the court's award of interest. We affirm.

I.

On a motion to enforce a settlement, we review the documentary record in a light most favorable to the non-moving party, just as we would on a motion for summary judgment. See Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474–75 (App. Div. 1997). With that standard in mind, these are the facts.

Plaintiff resided at the Village of Timber Creek condominium when she slipped and fell on a sidewalk near her home. On the day her suit against the Association was to go to trial, the parties' counsel met to settle the matter. Counsel orally agreed that Kupolati would receive $180,000; in return, Kupolati would sign a general release, waiving any claims against the Association.[2]

[1] We recognize that plaintiff signs her name "Gleatina" Kupolati. Elsewhere in the record, her name is listed as "Gleantina" Kupolati. For convenience, we use the name that appears in her original complaint.

[2] Evidently, counsel did not spread the settlement terms on the record in open court. But "the practice of spreading the terms of [an] agreement upon the record, although a familiar practice, is not a procedure requisite to enforcement." Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983).

A-0687-19T1

However, defense counsel's subsequently-prepared settlement documents went further. The general release covered the Association's insurer (as well as its various affiliated and related entities), in addition to the Association, releasing them from most claims, including Medicare liens under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2). Defense counsel also insisted that plaintiff's physician certify that plaintiff's slip-and-fall injuries would not require any additional treatment or monitoring.

Plaintiff's counsel amended the proposed release, striking the provisions that generally released the insurer.[3] However, plaintiff did accept a paragraph holding the insurer harmless against "any and all liens, known or unknown, or claims that may be asserted against the settlement proceeds." She also signed the defense-prepared settlement agreement; in so doing, she agreed that the $180,000 settlement payment would cover the insurer's portion of amounts payable to Medicare, then and in the future, and that "the responsibility to reimburse Medicare for its payments [was] solely the responsibility of the

---

[3] Defendant argues that the proposed release covered only the slip-and-fall incident. The release states that plaintiff releases claims "now existing or which may accrue, including any and all claims asserted or which could have been asserted in any lawsuit, on account of and in any manner arising out of or related to an event . . . occurring on or about 3/20/2015 at Village of Timber Creek (hereinafter, 'the Occurrence')" (emphasis omitted).

Releasor" — that is, plaintiff. Furthermore, plaintiff's counsel stated in a letter that his office would satisfy any Medicare liens (and certain other liens) before distributing the settlement funds.

Although plaintiff did not provide a physician's certification, she eventually provided a physician's letter stating that she was doing well under her pain-management regimen, and that no additional treatment or surgery was indicated.

But the parties remained at odds over the general release (as pertained to the insurer) and the physician certification. Plaintiff moved to enforce the settlement without the two disputed items; defendant cross-moved to enforce a settlement with them. After finding that the parties did not agree upon either disputed item, the court granted plaintiff's motion. The court found that defendant failed to establish that either a general release of a non-party insurer, or a physician's certification regarding future treatment, was standard practice. The court noted that holding an insurer harmless for Medicare claims <u>was</u> standard practice, but it pointed out that plaintiff had already done so.

The court also ordered defendant to pay interest, at the post-judgment rate of three-and-a-half percent, on the $180,000 settlement amount. Asked when the interest would start running, the court ordered that it commence thirty days

after plaintiff signed the amended releases. Before choosing the thirty-day period, the court inquired whether, under the Unfair Claims Settlement Practices Act, a payment would have been due within fourteen or thirty days; plaintiff's counsel stated he would accept interest commencing after thirty days.

Defendant's appeal followed.

## II.

## A.

We understand defendant to present two alternative arguments in challenging the order to enforce: (1) the trial court should have held an evidentiary hearing, because there was a genuine factual issue regarding the settlement's terms; or (2) the trial court should have, without an evidentiary hearing, enforced defendant's version of the settlement, which included terms allegedly consistent with standard industry practice.

We review de novo the trial court's decision that there existed no genuine issue of material fact, as we do in reviewing a summary-judgment order. Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 330 (2010) (stating that "the appellate court should first decide whether there was a genuine issue of material fact"). If no genuine dispute exists, then we must decide whether the trial court correctly ruled that the parties contracted to settle upon the plaintiff's alleged terms. Ibid.

A-0687-19T1

(stating that, absent a genuine issue of material fact, the appellate court must "then decide whether the trial court's ruling on the law was correct"). Our de novo review extends to legal issues of contract formation. See NAACP v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 430 (App. Div. 2011).

"A settlement agreement between parties to a lawsuit is a contract," Nolan ex rel Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), and is "governed by [the general] principles of contract law," Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alteration in original) (quoting Brundage, 195 N.J. at 600–601).

Because our system highly values dispute-settlement contracts, Quinn v. Quinn, 225 N.J. 34, 44 (2016), we "strain to give effect to the terms of a settlement wherever possible," Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Div. of Rate Couns. v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523 (App. Div. 1985)). A court will enforce a settlement agreement, which "usually involves the payment of money by one party in consideration for the dismissal of a lawsuit by the other party," Thompson v. City of Atlantic City, 190 N.J. 359, 379 (2007), if "the agreement addresses the principal terms required to resolve the dispute," Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 421 N.J. Super. 445, 453 (App. Div. 2011), aff'd, 215 N.J. 242 (2013). A principal, or "essential," term, is one "which is essential to a

determination of [the parties'] rights and duties." Restatement (Second) of Conts. § 204 (Am. Law Inst. 1981).

If "the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). Nonetheless, a court will enforce an oral agreement that includes essential terms even if the "writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993).

Plaintiff bore the initial burden to establish both the agreement to settle, and defendant's breach. Globe Motor Co., 225 N.J. at 482. She satisfied her burden through the certification of her counsel, who (evidently) negotiated the settlement.[4] Counsel certified that the parties orally agreed that defendant would pay plaintiff $180,000, and that plaintiff would generally release defendant in return. He also certified that the parties never agreed to generally release the insurer, or to provide a physician certification; in fact, they did not even discuss the certification in conference. Counsel also identified the several documents

---

[4] Plaintiff's counsel does not explicitly state that he personally negotiated the settlement with defense counsel. However, even if one of plaintiff's counsel's associates negotiated it and reported the events to plaintiff's counsel, defendant does not raise a hearsay objection. Nor does defendant dispute the terms of the oral agreement.

he did provide to defendant, and stated that defendant withheld payment of the settlement amount.

At that point, defendant, as the non-moving party, bore the burden to marshal competent evidence to demonstrate a genuine dispute of material fact. Globe Motor Co., 225 N.J. at 479–80; see R. 1:6–6. However, defense counsel, in his responding certification, did not deny plaintiff's version of the settlement conference. Defense counsel observed that plaintiff alleged that defendant had included "supposedly unilateral terms not previously agreed to by the parties." But defense counsel never denied that those terms were, indeed, unilateral. In particular, he did not claim that, in the settlement conference, he had demanded that plaintiff generally release the insurer and provide a physician's certification, let alone that plaintiff agreed to those demands. Defense counsel referred the court to his letter brief, but that, too, failed to recite what transpired in the settlement conference. In any event, a party may not present facts "which are neither of record, judicially noticeable, nor stipulated, by way of statements of counsel made in supporting briefs." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:6–6 (2021).

Therefore, we conclude that there was no genuine dispute that the parties agreed to essential and enforceable terms of a settlement agreement, but did not

expressly agree that plaintiff would provide either a general release of the insurer or a physician certification.

Nor are we persuaded that, even if the parties did not expressly agree to the release and the certification, those elements were essential, including them is standard practice in settling personal injury suits, and they were implied.[5] "[U]nder general contract law terms may be implied in a contract . . . because they are necessarily involved in the contractual relationship so that the parties must have intended them and have only failed to specifically express them because of sheer inadvertence or because the term was too obvious to need expression." Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965). Specifically, a court may supplement an agreement with terms common to an industry "if each party knows or has reason to know of the usage and neither party knows or has reason to know that the other party has an intention inconsistent with the usage." Restatement (Second) of Conts. § 221 (Am. Law Inst. 1981). But if "the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the

---

[5] Defendant also presents authority that agreements to indemnify another party for Medicare claims are valid and enforceable. But the issue before the court was the formation, not the validity, of such an agreement.

circumstances is supplied by the court." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Restatement (Second) of Conts. § 204 (Am. Law Inst. 1981)). Such a term may be "based upon customs in the industry." See Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 285 (App. Div. 2007); see also Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979).

However, defendant failed to present any competent evidence that generally releasing a tortfeasor's insurer was a common and customary practice in settling personal-injury suits. Nor did defendant present competent evidence that its demand for the physician's certification was consistent with industry customs. Absent such evidence, there was no industry-usage basis to supply such terms, and the trial court did not err in refusing to do so. Furthermore, the general release and the physician's certification fall short of essential terms — that is, terms without which the court could not enforce the settlement agreement. In other words, the agreement contained no gap that the court needed to fill with a release and certification.

In sum, the trial court did not err in granting plaintiff's motion to enforce the settlement agreement (as plaintiff's counsel described that agreement).

B.

Finally, we reject defendant's challenge to the trial court's award of "post-judgment" interest, which began to accrue thirty days after plaintiff executed the acceptable settlement documents. In particular, defendant contends that the court misplaced reliance on the Unfair Claim Practices Settlement Act, which played no role in the case.

We recognize that the court awarded interest that began accruing in January 2019, eight months before the court entered the order enforcing the settlement. Thus, the court actually awarded pre-judgment interest. Cf. Pressler & Verniero, Current N.J. Court Rules, cmt. 1.2.2 on R. 4:42–11 (2021) (stating that "[p]ost-judgment interest runs when the judgment is entered"). But the court's reference to the post-judgment rate is of no consequence, because, as the trial judge correctly noted, "post-judgment or pre-judgment are essentially the same." See Rule 4:42–11(b) (stating that, in tort actions, "[p]rejudgment interest shall be calculated in the same amount and manner provided for by paragraph (a) of this rule").

Although plaintiff's underlying claim was for tort damages, the court awarded interest on her breach-of-contract claim — that is, her claim that defendant breached the settlement agreement. Equitable principles, not Rule

11

4:42–11, govern a court's decision to award pre-judgment interest on a contract claim. Cnty of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006). The decision to award interest, and the rate awarded, both lie within the trial court's "sound discretion." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 390 (2009). The interest award is designed to compensate the plaintiff for the lost use of the money. Ibid. "Unless the allowance of prejudgment interest 'represents a manifest denial of justice, an appellate court should not interfere.'" Ibid. (quoting Cnty. of Essex, 186 N.J. at 61).

And we discern no basis to do so here. Plaintiff was entitled to the payment of $180,000 based on the settlement agreement that counsel reached. Defendant retained use of the money in breach of the agreement.[6] The trial court reasonably exercised its discretion in utilizing the post-judgment interest rate, and in deciding to start interest running thirty days after plaintiff signed the documents. Evidently, the court referred to the Unfair Claims Settlement Practice Act only because the court believed it supplied an analogous standard

_____

[6] We note that even after the court entered its order, defendant persisted in its non-payment. At oral argument on appeal, defense counsel admitted that defendant had not yet paid plaintiff, although defendant failed to secure a stay pending appeal, or to post a supersedeas bond, or to deposit the amount due with the court. See R. 2:9–5(a).

12

for the prompt payment of a claim.[7]  The court did not indicate that the Act governed.  Therefore, we shall not disturb the trial court's interest award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7]  Because the court referred to the Act for that limited purpose, we need not examine in detail the time periods for insurance-claim payments under the Act. See N.J.A.C. 11:2–17.7.