**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2326-20

LINA DA SILVA,

    Plaintiff-Appellant,

v.

AMARO DA SILVA,

    Defendant-Respondent.

_____

Submitted September 14, 2022 – Decided September 29, 2022

Before Judges Accurso, Firko and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1471-19.

Camacho, Gardner & Associates, LLP, attorneys for appellant (Donald L. Gardner, on the brief).

Abramson Law Group LLC, attorneys for respondent (Gregory S. Abramson, on the brief).

PER CURIAM

    Plaintiff Lina Da Silva appeals from Law Division orders: (1) granting

defendant and ex-husband Amaro Da Silva's motion for summary judgment; (2)

denying her motion for reconsideration; (3) granting defendant's application for counsel fees; and (4) denying her motion for reconsideration relative to the award of counsel fees. Because our review of the record convinces us there is substantial credible evidence to support the trial court's findings, we affirm.

I.

Viewed in the light most favorable to plaintiff, Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016), the pertinent facts are as follows. The parties were married in 2012 and divorced in 2017. On March 4, 2014, plaintiff's father, Luciano Sanchez, purchased a one-family home in Lyndhurst. Sanchez allowed the parties to rent the house from him. They accepted; however, before they moved in, construction work was done on the house. Defendant, who is not a construction professional, undertook the work himself without the knowledge or consent of plaintiff or her father. According to plaintiff,[1] defendant failed to secure the proper permits, used substandard materials, performed shoddy work, and consequently, caused substantial damage to the house.

---

[1] Plaintiff's version of events is taken from her complaint because there is scant discovery or other evidence presented in the record.

A-2326-20

In an effort to remedy the situation, plaintiff claims she was immediately forced to spend her own money to repair the substandard work before the parties moved in. In January 2015, the parties moved into the house. In February 2016, plaintiff filed a complaint for divorce in Bergen County, which contained a demand for equitable distribution of all assets and debts acquired during the marriage.[2] Four months later, defendant vacated the home. On November 14, 2017, the judgment of divorce (JOD) was granted. A settlement agreement was incorporated into the JOD.[3] The JOD provided "that all issues pleaded and not resolved in the judgment are deemed abandoned."

During the pendency of the divorce action in April 2017, defendant filed an action in the Law Division in Hudson County against Sanchez seeking reimbursement for the value of the construction work done on the house, which he claimed to have supervised and paid for. Ultimately, after a four-day jury trial, defendant prevailed in the action and obtained a judgment in the amount of $62,950.96, inclusive of interest and costs, against his former father-in-law—Sanchez—on February 6, 2019. The record shows Sanchez did not appeal the judgment.

---

[2] Docket No. FM-02-1664-16.

[3] The settlement agreement is not included in the appendices.

On February 26, 2019, shortly after the Hudson County judgment was entered, plaintiff filed the complaint in the matter under review in the Law Division in Bergen County against defendant seeking reimbursement of the monies she asserts was spent on the same construction project. In her complaint, plaintiff sought damages for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and conversion. Plaintiff also alleged defendant misappropriated her funds and marital funds, causing the Lyndhurst Building Department to conduct an investigation, and that he lied to her about deficiencies with the construction. In the ad damnum clause, plaintiff sought an accounting of the construction costs and a refund of monies to avoid defendant being unjustly enriched.

On March 6, 2019, defendant's counsel served a notice on plaintiff's counsel advising that her lawsuit was frivolous pursuant to Rule 1:4-8 because plaintiff does not own the subject property and lacks standing to file a complaint. The notice also stated plaintiff was "barred" from seeking further damages "pursuant to the entire controversy doctrine recited in Rule 4:30A." The notice provided plaintiff with a twenty-eight-day period of time to withdraw the complaint or potentially face sanctions under Rule 1:4-8.

4

In January 2019, plaintiff filed a motion in the Hudson County matter to stay the judgment against her father and to consolidate the Hudson litigation with her complaint in Bergen County. The motion was denied by the Hudson County assignment judge and refiled in Bergen County. The Bergen County assignment judge denied plaintiff's motion concluding: "No case law, New Jersey [s]tatute or [c]ourt [r]ule allows a resolved lawsuit reduced to a judgment by a jury trial to be consolidated into a pending complaint."

Following a period of discovery and upon receiving plaintiff's certified answers to interrogatories, defendant moved to dismiss her complaint for plaintiff's failure to answer or provide documentation in support of her claims. The trial court denied defendant's motion without prejudice and ordered plaintiff to provide more specific answers to interrogatories addressed to her demand for reimbursement for negligent work allegedly performed by defendant. No depositions were taken, and no expert reports were served.

On October 14, 2020, defendant filed a motion for summary judgment. The court heard oral argument on November 19, 2020, and entered an order granting defendant summary judgment and dismissing plaintiff's complaint. In a decision from the bench, the court found: "All the causes of action alleged by . . . plaintiff took place during the marital relationship."

A-2326-20

Relying upon a certification submitted in support of the summary judgment motion by one of defendant's prior attorneys, the court also found the "plan" was for Sanchez to "convey" the house to the parties "once their credit was reestablished so they could afford to repay . . . Sanchez's down payment."

Further, the court explained:

> [T]he parties were living separately. [Plaintiff] lived as a tenant in her father['s] . . . house[,] which was located [in] Lyndhurst . . . .
>
> [Defendant] spent tens of thousands of dollars to upgrade and improve . . . Sanchez's house. The parties moved into . . . Sanchez's house in January 2015.
>
> In the divorce, [defendant] repeatedly brought up the subject of repayment for all or part of the money he spent on improving his father-in-law's house. The money he spent was borrowed from his pension and his savings which existed prior to the marriage. Both [plaintiff] and her attorney . . . refused to even discuss claims against his father-in-law. [Plaintiff's] standard answer was, that's my father's problem. Take it up with him.
>
> Sanchez was never a party to the divorce. In addition, . . . since [plaintiff] had no ownership in her father's house, it was not subject to the jurisdiction of the Family Court for purposes of equitable distribution. Any insinuation or statement by [her counsel] that [defendant's] claims against his former father-in-law . . . were resolved in the divorce is complete fabrication.

6

The entire settlement between [defendant] and his former wife was placed on the record by [her counsel]. Because of the late hour, the terms were written by [her counsel] and initialed by the parties. [Plaintiff's counsel] was instructed to submit a more formal written agreement, but he never got around to it because two days after the divorce, his client changed her mind.

I have attached a copy of the [JOD][,] which was signed by the [c]ourt with [plaintiff's counsel's] handwritten addendum. There's absolutely nothing which refers to claims involving . . . Sanchez. Defendant sued and recovered from—well, now I'm— I'm seeing a [$]62,000[] judgment against . . . Sanchez to recoup the money he spent on . . . Sanchez's house. . . . Sanchez in that action did not—and, by the way, I just want to state again I'm not exactly sure of the amount of money. It's—it's in that range. . . . Sanchez did not join any third parties, or claim any credits or set offs for negligence against the contractors. He did not file a counterclaim against [defendant].

In many ways, the action here that's before this [c]ourt is an attempt to circumvent the entire controversy doctrine [Rule] 4:30[A]. This [c]ourt finds . . . plaintiff has not presented any evidence to create an issue of material fact. I have reviewed the answers to interrogatories which were supposedly the response to this [c]ourt's last order, and they have absolutely no information whatsoever as to any specific information as to any of plaintiff's claims in terms of anything other than vague allegations that she believes things are wrong in the house, and things were not done in the house as she would have wanted them to be.

There—there's no specifics. There's no documentation. There's no receipts. There's no proofs

7

at all. There is no proof of any kind that plaintiff ever spent any of her own money to fix any substandard work. There's no expert reports or estimates by any craftsman asserting the need for repairs or potential problems. There's no proof at all . . . how much money and from where . . . defendant defrauded, misappropriated or embezzled funds from [plaintiff].

Thereafter, plaintiff filed a motion for reconsideration, and defendant moved for counsel fees and costs on the grounds the litigation was frivolous. On January 15, 2021, the court denied plaintiff's motion for reconsideration in an oral opinion following argument. That same day, the court granted defendant's motion for counsel fees and costs. In its decision, the court found "[t]here are no legitimate causes of action of unjust enrichment, fraud, [or] negligence." The court also found plaintiff's allegations in the complaint "are false," and her counsel was "aware that there is no claim of non-compliance with local building codes to justify expenditures of [plaintiff]."

The court concluded plaintiff violated N.J.S.A. 2A:15-59.1 because her complaint "was commenced and continued in bad faith solely for the purpose of harassment." In addition, the court emphasized "there was never any proof" to support the causes of action alleged in the complaint. The court also determined the law firm representing plaintiff violated Rule 1:4-8 because the complaint was filed to "cause unnecessary delay and to increase the cost of the litigation."

A-2326-20

After reviewing the certification of services submitted by defendant's counsel, the court awarded $17,600 in fees and $540 in costs for a total of $18,140 jointly and severally against plaintiff and the law firm representing her.

On March 31, 2021, the court conducted oral argument on plaintiff's motion for reconsideration. Following argument, the court gave an oral opinion and comprehensively detailed the protracted nature of the litigation. For the first time in opposition to defendant's cross-motion seeking additional counsel fees and costs, the court emphasized plaintiff submitted exhibits, comprised mostly of invoices, receipts, a bank statement, and a construction permit from 2014, ostensibly in support of the allegations in her complaint. The court found none of the exhibits proved defendant stole money from plaintiff and nothing new was provided. After reviewing defendant's certification submitted in support of counsel fees, the court awarded an additional amount of $3,170. Thus, the amount of fees awarded to defendant's counsel was $18,140 plus $3,170—for a total of $21,310. This appeal ensued.

Plaintiff submits the following arguments for our consideration:

> (1) the court erred when it failed to apply the proper standard of review in deciding defendant's motion for summary judgment;

(2) the court erred when it considered Family Part issues without having jurisdiction to do so and improperly applied the law; and

(3) the court erred in its finding of frivolous litigation and the awarding of attorney's fees.

## II.

We review motions for summary judgment de novo, applying the same standard as the trial court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Summary judgment is warranted where there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. A genuine issue exists "if, considering the burden . . . the evidence submitted . . . together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

Thus, "[o]n a motion for summary judgment, if the evidence of record— the pleadings, depositions, answers to interrogatories, and affidavits—'together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact,' then the trial court must deny the motion." Steinberg v. Sahara Sam's Oasis, L.L.C., 226 N.J. 344, 366 (2016) (first quoting R. 4:46-2(c), then citing Brill v. Guardian Life Ins., 142 N.J. 520, 540 (1995)).

Conversely, "[s]ummary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Put another way, "[t]he key inquiry is whether the evidence presented, when viewed in the light most favorable to the non-moving party is 'sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" T.B. v. Novia, 472 N.J. Super. 80, 93 (App. Div. 2022) (quoting Brill, 142 N.J. at 540).

Conclusory statements within the pleadings, without factual support in the record, are insufficient to create a disputed question of fact. Sullivan v. Port Auth. of N.Y. and N.J., 449 N.J. Super. 276, 279-80 (App. Div. 2007). Likewise, a respondent's own self-serving attestations, without more, are not enough to defeat the motion for summary judgment. Martin v. Rutgers Cas. Ins., 346 N.J. Super. 320, 323 (App. Div. 2002).

It is unclear from the record exactly what information was before the trial court at the time defendant's motion for summary judgment was decided. Plaintiff asserts she submitted a statement of disputed facts but does not note

which, if any, exhibits were included.[4]  The record indicates the only materials provided to the trial court were the complaint, answer, defendant's statement of undisputed facts (including the JOD, deed, certification of counsel, and information obtained from answers to interrogatories), and plaintiff's counterstatement of facts.  We will address the three counts set forth in plaintiff's complaint.

A.    Count One:  Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's first cause of action alleges breach of the implied covenant of good faith and fair dealing.  She avers defendant used her money to make various payments related to the construction and argues this obligated defendant to "verify that proper materials and services were being . . . purchased" and "ensure the work that [contractors] performed complied with what is standard in the industry."

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing."  Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997).  This covenant amounts to a promise that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party

---

[4]  The majority of exhibits included in plaintiff's appellate appendix were only submitted in connection with her motions for reconsideration.

A-2326-20

to receive the fruits of the contract." Ibid. (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

As the trial court aptly pointed out, "[t]here can be no breach of the implied covenant of good faith and fair dealing unless the parties have a contract." Where there is no contract, there can be no implied covenant and where there is no covenant, there can be no breach. Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 443 (App. Div. 2016).

Plaintiff did not and does not argue that a contract existed between the parties for whatever construction work was actually performed on the house. No reasonable trier of fact could find that the elements of this claim were met. Because the case did not "require submission of the issue to the trier of fact," we conclude the trial court did not err in granting summary judgment with respect to count one. Steinberg, 226 N.J. at 366.

B.    Count Two:  Unjust Enrichment

The second count of plaintiff's complaint alleged unjust enrichment because defendant "diverted and converted money and property belonging to [her]," "never had a legal or equitable right to take the money and property," and that "it would be inequitable for . . . defendant to retain the money and property." Plaintiff contends that the court should have denied defendant's

motion for summary judgment because there are factual disputes on this point, as shown by the pleadings and statements of material facts.

"The doctrine of unjust enrichment rests on the equitable principle that . . . person[s] shall not be allowed to enrich [themselves] unjustly at the expense of another." Goldsmith v. Camden Cnty. Surrogate's Off., 408 N.J. Super. 376, 382 (App. Div. 2009) (quoting Assocs. Com. Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986)). "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'" Ibid. (quoting Cnty. of Essex v. First Union Nat'l Bank, 373 N.J. Super. 543, 549-50 (App. Div. 2004), rev'd on other grounds, 186 N.J. 46 (2006)) (alteration in original).

Most commonly, such a claim arises in the situation where a party "has not been paid despite having had a reasonable expectation of payment for services performed or a benefit conferred." Cnty. of Essex, 373 N.J. Super. at 550. Here, since plaintiff performed no services for defendant for which she claims recovery is due, the "benefit" received by defendant would purportedly be the money that he allegedly received from plaintiff to facilitate the construction.

The record clearly supports the trial court's finding that plaintiff did not include any evidence—whether documentary or testimonial—supporting her version of events, describing what construction was done, what damage defendant caused, or what expenditures she made to cure any damages. Moreover, plaintiff's claim of unjust enrichment was only supported by her own self-serving attestations that she paid an unspecified amount to correct unidentified damages.  "A key aim 'of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.'"  Friedman, 242 N.J. at 472 (quoting Celotex Corp., 477 U.S. at 323-24).

As our Supreme Court has held, summary judgment is appropriate as against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Ibid. (quoting Celotex Corp., 477 U.S. at 322).  By failing to adduce any evidence or genuine material issues of fact, plaintiff failed to establish the essential elements of an unjust enrichment claim, and summary judgment was properly granted to defendant.

C.    Count Three:  Conversion

Plaintiff's third cause of action alleged the tort of conversion.  Plaintiff contends the trial court's grant of summary judgment on this count was error,

again reiterating her argument there were factual disputes evinced in the pleadings and issues of material fact. Again, we disagree.

"The crux of conversion is wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." Chicago Title Ins. v. Ellis, 409 N.J. Super. 444, 456 (App. Div. 2009). While conversion has historically been applied to chattels, it has been applied to monetary claims as well. Id. at 454.

Because plaintiff failed to marshal prima facie evidence that defendant exercised wrongful control over her money, she failed to establish—even viewing the record in the light most favorable to her—a critical element of conversion. Based upon our careful review of the record, we are satisfied defendant's motion for summary judgment was properly granted as to count three of the complaint.

## III.

In her brief on appeal, plaintiff does not argue that her motion for reconsideration relative to the grant of summary judgment was wrongly denied. Thus, we could consider the argument waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived."). However, plaintiff's motion for reconsideration and the

16                                                                    A-2326-20

documents submitted to the trial court are intertwined with both the motion for summary judgment and the motion for counsel fees, and the case information statement indicates that it is being appealed. We therefore add the following brief remarks.

A trial court's denial of a motion for reconsideration is reviewed for abuse of discretion. Branch, 244 N.J. at 582. A motion for reconsideration "shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions [which] counsel believes the court has overlooked or as to which it has erred." R. 4:49-2. Reconsideration should be reserved for situations where: "(1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

In the alternative, "if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Ibid.

We are convinced none of these three criteria is met here. The court's decision rested soundly on the case as it was presented and was consonant with existing legal principles. While plaintiff provided certifications and accompanying documents with her motion for reconsideration, all of those documents could have and should have been provided on the initial motion.

First, plaintiff provided a certification from plaintiff's counsel's law partner who briefly represented plaintiff during her divorce proceedings. The attorney's certification addressed the divorce proceedings and the prior relationship between the parties. Appended to the certification were a series of letters between plaintiff's counsel, defendant's divorce counsel, and the Family Part regarding the JOD, authored at the time of the initial divorce settlement.

Second, plaintiff provided her own certification and attached two of her prior certifications, prepared during the divorce proceedings. Plaintiff's certification in support of her motion for reconsideration discussed her relationship with defendant. She denied harassing him and instead accused him of harassing her and of lying.

Third, plaintiff's counsel provided his own certification, which claimed that the gaps in evidence were due to the COVID-19 pandemic; defendant's refusal to comply with discovery; and the court's refusal to extend discovery

deadlines. These documents were largely from the parties' divorce proceedings and were certainly available at the time of the summary judgment motion. Where newly offered information could have been adduced at the time of the original motion, it will not serve as the basis to grant a motion for reconsideration. See Del Vecchio v. Hemberger, 388 N.J. Super. 179, 189 (App. Div. 2006). Saliently, none of the documents submitted by plaintiff in connection with her motion for reconsideration actually addressed the court's finding that the specific descriptions of the work allegedly done, and the monies allegedly spent, were fatally missing from the record. Consequently, the court did not abuse its discretion in denying plaintiff's motion for reconsideration as to the grant of summary judgment to defendant.

IV.

In light of our conclusion that the trial court properly granted defendant's motion for summary judgment, plaintiff's next contention the court erred when it considered Family Part issues without having jurisdiction to do so is moot. However, we add the following.

The trial court held:

> All the causes of action alleged by . . . plaintiff took place during the marital relationship. . . . [P]laintiff may have some claim for misappropriating her separately-owned funds or an alleged claim for . . .

19

misappropriating her separately-owned funds. But once she filed for divorce, she was required to address those claims within the context of the divorce action.

Rule 4:30A provides, relevantly: "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine. . . ." "The entire controversy doctrine requires that all claims between parties 'arising out of or relating to the same transactional circumstances . . . be joined in a single action.'" Brennan v. Orban, 145 N.J. 282, 290 (1996) (quoting Brown v. Brown, 208 N.J. Super. 372, 377-78 (App. Div. 1986)). This "policy of mandatory joinder applies to family actions," and, more particularly, divorces. Ibid. (citing Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 5:1-2 (1996)). Indeed, our Supreme Court determined in Tevis v. Tevis, 79 N.J. 422 (1979), that "marital torts, as a class, are to be considered as related to, not 'independent' of, divorce suits" for the purposes of the doctrine. Ibid. (citation omitted).

When torts occur during the pendency of the marriage, joinder is available. Id. at 291. In Brennan, 145 N.J. at 291, the court dealt with a case of assault which occurred during the marriage and found:

> [T]he assault underlying Brennan's personal injury claim occurred before she filed for divorce. The tort

A-2326-20

arose out of her marital relationship. In addition, the tort complaint alleges many of the same factual circumstances as the divorce complaint that plaintiff had filed two weeks earlier. Thus, joinder under the entire controversy doctrine is appropriate in this case.

As in Brennan, the causes of action alleged here indisputably occurred during the marriage and thus "arose out of the marital relationship." The original construction at issue, whatever that may have consisted of, and the correction of alleged damages plaintiff claimed she paid for, would have occurred in 2014, prior to the filing of the complaint for divorce, and should have been litigated in the divorce case. Based on our de novo review of this legal issue, we discern no basis to disturb the trial court's finding that there was no basis to relax application of the entire controversy doctrine here.

In a seemingly alternative argument, plaintiff asserts the trial court lacked jurisdiction to rule on defendant's summary judgment motion because the motion should have been heard in the Family Part. Plaintiff's argument is devoid of merit. Contrary to plaintiff's attestation, this issue was not raised below. We will overturn a decision only in the event of plain error. R. 2:10-2. In any event, plaintiff's argument is procedurally barred. Rule 4:3-1(b) specifies that:

> A motion to transfer an action from one trial division of the Superior Court or part thereof to another . . . shall be made within [ten] days after expiration of the time prescribed by [Rule] 4:6-1 for the service of the last

21

permissible responsive pleading. . . . Unless so made, objections to the trial of the action in the division specified in the complaint are waived. . . .

Because plaintiff filed the matter in the Law Division and at no point moved to transfer the action to the Family Part, she waived any objection to the Law Division's ability to decide the case.

V.

Lastly, we address plaintiff's contention that the court improvidently found the litigation was frivolous and erred in awarding counsel fees and costs to defendant. We review an award of sanctions and attorney's fees for an abuse of discretion. Occhifinto v. Olivo Constr. Co., 221 N.J. 443, 453 (2015); Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407 (App. Div. 2009). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. INS, 779 F.2d 1260, 1265 (7th Cir. 1985)). "Reversal is warranted when 'the discretionary act was not premised on consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amount[ed] to a clear error in judgment.'" Ferolito, 408 N.J. Super. at 407 (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

However, we review a trial judge's legal conclusions de novo.  Occhifinto, 221 N.J. at 453.

"Sanctions for frivolous litigation against a party are governed by the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1."  Bove v. AkPharma, Inc., 460 N.J. Super. 123, 147 (App. Div. 2019).  Rule 1:4-8 "authoriz[es] similar fee-shifting consequences as to frivolous litigation conduct by attorneys."  Ibid.  The Frivolous Litigation Statute establishes a "disjunctive, two-prong" test for determining whether "the action of the non-prevailing party [was] frivolous."  In re K.L.F., 275 N.J. Super. 507, 524 (Ch. Div. 1993).  However,

> [w]hen a prevailing party's allegation is based on an assertion that the non-prevailing party's claim lacked a reasonable basis in law or equity, and the non-prevailing party is represented by an attorney, an award cannot be sustained if the [non-prevailing party] did not act in bad faith in asserting or pursuing the claim.
>
> [Bove, 460 N.J. Super. at 151 (alteration in original).]

When an attorney or pro se party signs, files, or advocates a "pleading, written motion, or other paper," that attorney or pro se party "certifies that to the best of [their] knowledge, information, and belief":

> (1) [T]he paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; and

(4) the denials of factual allegations are warranted on the evidence or, as to specifically identified denials, they are reasonably based on a lack of information or belief or they will be withdrawn or corrected if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support.

[R. 1:4-8(a)(1)-(4).]

"A court may impose sanctions upon an attorney if the attorney files a paper that does not conform to the requirements of Rule 1:4-8(a), and fails to withdraw the paper within twenty-eight days of service of a demand for its withdrawal." United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009). "The nature of conduct warranting sanction under Rule 1:4-8 has been strictly construed. . . ." First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007). In fact, the term "frivolous" has a restrictive meaning. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561

24

(1993). Thus, "[a] claim will be deemed frivolous or groundless [only] when no rational argument can be advanced in its support, when it is not supported by any credible evidence, when a reasonable person could not have expected its success, or when it is completely untenable." Belfer v. Merling, 322 N.J. Super. 124, 144 (App. Div. 1999).

An award of attorney's fees and costs is not warranted where the plaintiff "had a reasonable, good faith belief in the merits of the action." Wyche v. Unsatisfied Claim & Judgment Fund of N.J., 383 N.J. Super. 554, 561 (App. Div. 2006) (citing DeBrango, 328 N.J. Super. at 227). Likewise, sanctions should not be "imposed because a party is wrong about the law and loses [their] case." Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 580 (App. Div. 2016). Hence, a judge should only award sanctions for frivolous litigation in exceptional cases. See Iannone v. McHale, 245 N.J. 17, 28 (App. Div. 1990).

This restrictive approach recognizes the principle that: citizens presumptively should have ready access to our courts, Belfer v. Merling, 322 N.J. Super. at 144; "honest, creative advocacy" should not be discouraged, DeBrango, 328 N.J. Super. at 226-27; and litigants generally should bear their own costs, where the litigation at least possesses "marginal merit[,]" Belfer, 322

N.J. Super. at 144 (citing <u>Venner v. Allstate</u>, 306 N.J. Super. 106, 113 (App. Div. 1997)).

N.J.S.A. 2A:15-59.1 outlines the conditions under which counsel fees can be assessed against a litigant.  The statute provides:

> A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> [N.J.S.A. 2A:15-59.1(a)(1).]

It continues:

> In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
>
>> (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
>>
>> (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

A-2326-20

[N.J.S.A. 2A:15-59.1(b).]

With these principles in mind, we have carefully reviewed the record, including certifications submitted by defendant's counsel in support of the motion for sanctions. Based on our examination and aware the trial court was intimately familiar with the facts of this case, as well as the facts of the parties' divorce action and the Hudson County litigation, we cannot conclude the court abused its discretion in finding defendant showed plaintiff displayed the "requisite bad faith or knowledge of lack of well-groundedness" in pursuing her claims. Iannone, 245 N.J. Super. at 31. We also do not ignore the fact that plaintiff failed to withdraw her complaint even though defendant notified her in writing the complaint was utterly baseless.

To the extent we have not addressed plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2326-20